## GUICE v. McGEHEE.

(Division B. Nov. 25, 1929.)

[124 So. 643. No. 28103.]

860

(Suggestion of Error Overruled Jan. 5, 1930.)

[125 So. 433.]

Kennedy & Geisenberger, of Natchez, for appellant.

Whittington & McGehee, of Meadville, for appellee.

Argued orally by **L. T. Kennedy**, for appellant, and by **L. A. Whittington**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant filed a petition against appellee in the circuit court of Franklin county under section 4186 of the

Code of 1906 (section 8077, Hemingway's Code of 1927) to contest the election of appellee to the office of county superintendent of education of Franklin county. There was a trial before the court without a jury by consent of the parties, resulting in the judgment in favor of appellee. From that judgment appellant prosecutes this appeal.

The statute provides, among other things, that ''the court shall, at the first term, cause an issue to be made up and tried by a jury, and the verdict of the jury shall find the person having the greatest number of legal votes at the election.''

There was a vacancy in the office of superintendent of education of Franklin county. A special election was held on the 15th day of December, 1928, to fill the vacancy. The returns of the managers of the election at the various voting precincts in the county to the county election commissioners showed that appellee had received a plurality of the votes. Appellant appeared before the county election commissioners and demanded a recount of the votes, which was had. The recount showed that appellee had received seven hundred twenty-four votes, appellant seven hundred nineteen votes, and McCue, another candidate two hundred four votes.

The election to fill the vacancy in the office being a regular election, and not a party primary, under the law the candidate receiving the largest number of legal votes was entitled to the office. Appellee was declared by the county election commissioners to have received a plurality of the votes, and accordingly she was commissioned and took charge of the office.

One ground of contest was that six absent voter ballots counted for the appellee were illegal because the absent voter statute was not complied with. Another was that five other ballots counted for appellee were

illegal because they contained distinguishing marks. We will consider these grounds in the order stated.

The first ground turns upon the question whether the absent voter statute, chapter 155 of the Laws of 1920, and chapter 256 of the Laws of 1922 (sections 8116 to 8129, inclusive, of Hemingway's Code 1927), is to be construed liberally in favor of the voter, or strictly against him. The trial court applied the principle of liberal construction, and held the absent voter ballots in question valid. The courts generally have construed election laws as mandatory only when their enforcement is sought before election in a direct proceeding for that purpose. After the election, such laws are held to be directory in support of the result. In determining the effect of irregularities through mistakes of voters and election officers, all statutes limiting the voter in the exercise of his right of suffrage are construed liberally in his favor, in order to ascertain the will of the majority of the voters. The entire machinery of the election laws is for the purpose of eliciting an expression of the choice of the electors. The omissions of the forms prescribed by law, or irregularities on the part of the managers, will not invalidate the election unless they are so gross and palpable as to defeat the popular preference, or to render the production of satisfactory evidence thereof impossible. Irregularities, not affecting the "purity of the election, and not in reference to matters made mandatory by law, do not invalidate the election." Word v. Sykes, 61 Miss. 649; Pradat v. Ramsey, 47 Miss. 24; Fullwood v. State, 67 Miss. 554, 7 So. 432; 9 R. C. L. 1172; 6 R. C. L. 1093, 1094, 1095. Under the Constitution and the registration and election laws of this state, the right to vote is not an absolute one. The qualification of voters is fixed by the franchise provisions of the Constitution and election laws adopted to carry out those provisions. Beginning with the ordinances adopted by

the Constitutional Convention of 1890, and coming down to the present time, the Australian ballot system has been a fixed policy of this state. The Code chapter on registration and election (Hemingway's Code 1927, section 7998 et seq.) contains an elaborate and carefully designed system for the registration of voters, and the conduct of elections; one of the outstanding purposes, in order to insure against fraudulent voting, being the provisions for electors casting their ballots secretly in booths at their respective election precincts.

The absent voter statute was an innovation on the Australian ballot system, adopted in 1920, and amended in 1922. The absent voter statute, as amended, is contained in sections 8116 to 8129, inclusive, of Hemingway's Code of 1927.

The first section of the statute (section 8116, Hemingway's Code 1927) defines "absent voter" to mean any qualified elector who is absent or expects to be absent from the county, precinct, or ward in which he resides on the day of the election.

The second section of the act (section 8117, Hemingway's Code 1927) provides that any qualified elector who has complied with the registration laws, and who is absent from his county on the day of holding any election, may vote at any such election if he complies with the absent voter statute.

The third section of the act (section 8118, Hemingway's Code 1927) provides that in all elections there shall be prepared and printed, at least ten days in advance, official ballots for each election district, to be designated as absent voter ballots, which ballots shall be prepared and printed in the same form and of the same size and texture as the regular ballots, except that they shall be printed on paper of a different color from the regular ballots.

The fourth section of the act (section 8119, Hemingway's Code 1927) makes it the duty of the commissioner of election, charged with printing and distributing the official ballots, to furnish the county registrar, at least ten days before the election, sufficient absent voter ballots for the use of all electors likely to be absent from the county on the day of the election.

The fifth section of the act (section 8120, Hemingway's Code 1927), provides that, at any time within thirty days next before an election, any elector expecting to be absent on the day of the election from the county of which he is an elector may make application to the county registrar of the county for an absent voter ballot to be voted in such election.

The sixth section of the act (section 8121, Hemingway's Code 1927) provides that the application for an absent voter's ballot shall be made to the county registrar of the county in which the applicant is an elector, which application *"shall be in writing and shall be signed by the applicant. It shall state the precinct or ward at which the applicant is entitled to vote; and if the application be for a primary election ballot, it shall state the political party with which the applicant is affiliated and shall be in substantially the following form, to-wit."* (Italics ours.) Then follows a very complete form of application to be used by the elector, which is to be signed and sworn to by him. The last paragraph of this section makes provision for electors who are unable to make application to the county registrar for an absent voter ballot; such an elector may cast his vote by writing the name of the candidate or candidates for whom he desires to vote on a blank sheet of paper, or by using an official ballot in the prescribed manner; but in either case he is required to attach to his ballot an affidavit taken before a qualified officer to the effect that he is a qualified elector in the election in which he is participat-

ing, and setting out his county, voting precinct, or ward, and that "he has not had opportunity to make application for an absent voter ballot."

The seventh section of the act (section 8122 of Hemingway's Code 1927) provides that, upon receipt of an application for an absent voter's ballot, properly signed and sworn to, or as soon thereafter as absent voter ballots have been printed, the county registrar shall send to such applicant by mail, or hand to him in person, one official absent voter's ballot, or, if there be more than one absent voter's ballot to be voted at such election, one of each kind, and shall inclose with such ballot or ballots one envelope, upon the front side of which shall be printed, "For the County Registrar, —— County, —— P. O., Mississippi," and upon the back of such envelope shall be printed an affidavit and certificate in substantially the following form:

"State of ——, County of ——. I, ——, do solemnly swear that I am a duly qualified elector of the (precinct of ——) (or) (ward——, in the city of ——), in the county of ——, state of Mississippi, and that I am entitled to vote at said (precinct) (or) (ward) at the next election; that I expect to be absent from the said county on the day of holding such election, and that I will have no opportunity to vote in person on that day.                     Signed. ————.

"Subscribed and sworn to before me this, the —— day of ——, 19—; and I hereby certify that the affiant exhibited his absent voter ballot to me unmarked; that he then in my presence, and in the presence of [no] other person, and in such manner that I could not see his vote, marked such ballot—; that he was not by me solicited or advised to vote for or against any man or measure. Seal."

"If absent voter is unable to sign his name, he shall make his mark, 'x,' and the officer taking this affidavit shall sign such voter's name and shall state the reason

for such affidavit being signed in such manner in his certificate attached to the affidavit.

"Provided that if the absent voter ballot is to be voted at a primary election, the affidavit shall state the political party with which the absent voter is affiliated."

The eighth section of the act (section 8123 of Hemingway's Code 1927) provides that the absent voter shall make and subscribe to the above affidavit before an officer with a seal, authorized to administer oaths, and the absent voter shall thereupon, "in the presence of such officer and in the presence of no other person, mark such ballot or ballots, but in such manner that such officer cannot see the vote, and such ballot or ballots shall thereupon, in the presence of such officer, be folded by such voter so that each ballot shall be separate and so as to conceal the vote, and be in the presence of such officer deposited by such voter in such envelope and such envelope securely sealed. The said envelope may be mailed, or handed personally, to that county registrar to whom it may be addressed."

The ninth section of the act (section 8124, Hemingway's Code 1927) provides that the county registrar, upon receipt of such 'envelope, "shall forthwith enclose the same, unopened, *together with the written application of such absent voter previously made in order to obtain such absent voter ballot, in a larger envelope, which shall be securely sealed and endorsed with the name of the proper voting precinct, the name and official title of such county registrar, and the words: 'This envelope contains an absent voter's ballot and must be opened only on election day at the polls while the same are open,' and such county registrar shall thereafter safely keep the same in his office until delivery by him as provided in the next section."* (Italics ours.)

The tenth section of the act (section 8125, Hemingway's Code 1927) provides for the transmission of the

absent voter's ballot by the county registrar to the managers of election of the different voting precincts in the county.

The eleventh section of the act (section 8126, Hemingway's Code 1927) provides as follows: "At any time between the opening and closing of the polls on such election day, such managers of election, in the presence of the other managers of election for such precinct or ward, *shall first open the outer or larger envelope only and compare the signature of such absent voter on such application with the signature on such affidavit. In case the managers of election find the affidavit is sufficient, and that the signatures correspond,* and that the applicant is a duly qualified elector of such precinct or ward and has not already voted in such election, they shall open the absent voter envelope in such manner as to not destroy the affidavit thereon, and take out the ballot or ballots therein, and without unfolding the same or permitting the same to be examined, deposit the same in the proper ballot box, showing by records such absent voter to have voted. In case such affidavit is found to be insufficient, or the said signatures do not correspond, or such applicant is not a duly qualified elector of the precinct or ward, such vote shall not be allowed, but without opening the absent voter envelope the managers of election shall mark across the face thereof, 'rejected as defective,' or 'rejected as not an elector,' as the case may be. The absent voter envelope, when such absent voter ballot is voted, and the absent voter envelope with its contents unopened when such ballot is rejected, shall be retained and preserved in the manner now provided by law for the retention and preservation of official ballots voted at such elections."

The thirteenth section of the act (section 8128, Hemingway's Code 1927) provides penalties for its violation, as follows: "If any person shall willfully swear falsely

to the affidavit provided for in section 6, he shall upon conviction thereof be deemed guilty of perjury and shall be punished as in such cases provided by law. If any county registrar, or commissioner of election or member of the executive committee, or manager of election, shall refuse or neglect to perform any of the duties prescribed by this act, or shall violate any of the provisions thereof, or if any officer taking the affidavit provided for in section 6 shall make any false statement in his certificate thereto attached, he shall be deemed guilty of a misdemeanor and shall be punished by a fine of not exceeding five hundred dollars or by imprisonment in the county jail not exceeding six months, or both such fine and imprisonment.''

It will be observed from the above section of the act that it is made a felony for the elector to make a false oath to his application to the county registrar for an absent voter's ballot. The statute declares such false oath to be a felony, perjury, and further denounces as a misdemeanor on the part of the county registrar, the election commissioners, or the managers of the election, neglect on their part to perform any of the duties prescribed by the statute, or the violation of any of the provisions thereof. And it is also made a criminal offense by this section for the officer taking the affidavit of the elector to his application for an absent voter's ballot to make a false statement, in his jurat thereto attached. The statute denounces such act as a misdemeanor, punishable by a fine not exceeding five hundred dollars, or imprisonment in the county jail not exceeding six months, or both such fine or imprisonment.

After a careful consideration of the language and purpose of the statute, the conclusion is inescapable, we think, that the legislature, in adopting the act, looked upon it as an exception to, or an innovation on, a long-established public policy of this state, as evidenced in our registration and election laws, which had been in

force for over thirty years. By the statute, the absent voter was favored. He was granted a privilege which had never theretofore existed in this state. The statute, in its every section, is couched in terms most mandatory, and concludes by denouncing as a misdemeanor the failure of any election officer to perform the duty required of him under the statute, and as a felony on the part of the elector to make a false affidavit to his application for his absent voter ballot. The legislature evidently had in mind that absent voting would be conducive to fraudulent voting, and undertook, in a most explicit and mandatory manner, to provide against fraud.

We hold that the statute must be construed as mandatory in all of its substantial requirements; and therefore an exception to the general rule that election laws are construed liberally in favor of the electors.

Applying that principle to the case in hand, we are of opinion that the six absent voters' ballots challenged in this case were illegal for the reason that they were cast by electors who had not previously made application for such ballots, as provided by section 6 of the act (section 8121, Hemingway's Code 1927). The requirement of that section of the act we think is one of the outstanding provisions designed to prevent fraudulent voting. Under section 11 of the act (section 8126, Hemingway's Code 1927) the managers of the election determine the genuineness of the ballot by comparing the signature of the voter attached to the application with his signature to the affidavit on the back of the envelope inclosing the ballot. In this case the managers had no such opportunity to perform that duty, for they had before them only one signature of the voter; namely, the signature to the affidavit on the back of the envelope inclosing the ballot.

The original five ballots challenged as containing distinguishing marks were sent up with the record. They are marked Exhibit I, R, N, H, and X, respectively. Ex-

hibit X has opposite the name of appellee the mark generally known as a check mark. Exhibit H has opposite the appellee's name a perpendicular mark. Exhibit N has opposite McCue's name an X made with pen and ink, plainly scratched out, and then an X made with pen and ink opposite appellee's name. Exhibit R has an X made, with pen and ink plainly marked opposite appellant's name, and one opposite appellee's name. And Exhibit I has opposite the name of appellee an X made with pen and ink, and one much dimmer opposite the name of McCue, also made with ink.

Section 4175, Code 1906 (section 8066, Hemingway's Code 1927), provides as follows: "Any voter who shall, except as herein provided, allow his ballot to be seen by any person, or who shall make a false statement as to his inability to mark his ballot, or who shall place any mark upon his ballot by which it can afterward be identified as the one voted by him, or any person who shall interfere or attempt to interfere with any voter when inside the compartment or enclosed place, or when marking his ballot, or who shall endeavor to induce any voter, before voting, to show how he will mark, or after voting how he has marked his ballot, shall be punished by a fine of not less than twenty-five nor more than one hundred dollars; and the election officers shall cause any person so violating the law to be arrested and carried before the proper officer or tribunal for commitment and trial for such offense."

In construing that statute, the court held, in Tonnar v. Wade (Miss.), 121 So. 156, 160, that ballots should not be rejected as having distinguishing marks on account of slight irregularities in the manner of marking; that it must appear clear that the voter intended to mark the ballot for identification; that, where the ballot contained other than legal marks, such marks will be pre-

sumed to have been innocently made, "unless their appearance shows to the contrary."

We are of the opinion that the marking of Exhibit N was a mere inadvertance of the voter, and was not intended as a distinguishing mark, and that the X opposite the name of McCue on Exhibit I is a blot from the X opposite appellee's name on said exhibit, the result of the failure of the voter to use a blotter on the X opposite appellee's name. On Exhibit H the perpendicular line opposite appellee's name has every appearance of having been made by design, and not in an effort to make an X. And the same is true of the check mark opposite appellee's name on Exhibit X. There is some question in the record as to whether this ballot was properly introduced in evidence; we do not pass on that. Exhibit R contains a cross made with pen and ink opposite the name of appellant, and one opposite the name of appellee, and it appears that neither was made by a blot from the other.

We hold that under the principles laid down in the case of Tonnar v. Wade, Exhibits X and H contain distinguishing marks, while Exhibits N, R, and I do not. But Exhibit R should not be counted for either candidate, because both were voted for. Exhibit N should be counted for appellee, because it has no distinguishing mark, and was cast for appellee. Exhibit R should be treated as a spoiled ballot, and should not be counted, because the voter made an X opposite the name of appellant, as well as that of appellee. Exhibit I should be counted for appellee, because the cross opposite the name of McCue was plainly a blot from that opposite the name of appellee.

After the trial of the case in the court below, and after it had been appealed to this court, appellee filed an affidavit and a motion to dismiss the appeal. The motion was based on the affidavit, which is an ex parte affidavit made by appellee. The affidavit sets out that, since the

trial of this cause in the court below, appellant had married one Raymond Weisinger, of Texas, and is now a resident citizen of that state, and therefore under the laws of this state would not be entitled to hold the office of county superintendent if she had been legally elected thereto. Appellee's position is that, with that showing, it is the duty of this court to dismiss the appeal. We cannot give our assent to that proposition. The question is brought in the case for the first time in this court by ex parte evidence given by appellee alone, without any opportunity on the part of appellant to be heard.

We do not decide whether either this court or the trial court is authorized to determine this question in a contested election case. We think, however, in the absence of briefs thoroughly presenting the question, and in view of the fact that the record is unsatisfactory in some other respects, it would be well to reverse the judgment appealed from and send the whole case back to be tried anew if either party desires, instead of reversing the judgment and entering judgment here.

Reversed and remanded.

**Ethridge, P. J.,** delivered the opinion of the court on Suggestion of Error.

Both sides have filed suggestions of error. For the appellant it is suggested that we ought to render judgment here. We do not think this is well taken, in view of the facts brought to the attention of the court; it being alleged in a motion that the appellant had married and permanently moved from the state. In our opinion, it was not proper to raise this question by motion, but only by plea in bar of the appeal. If the appellant is in fact disqualified from holding the office, she should not maintain the suit in this case, being a contest between claimants to office and not a proceeding by the state to remove from office.

The appellee suggests that the court erred in holding that certain absent ballots were illegal, because no application for such ballots was made by the voter prior to the election, and stating that the only evidence to support that finding of fact is a statement by the registrar of the county, "not any application blanks for absent voter ballots were printed, distributed, or used in the election." This statement is contained in an exhibit which was to be filed in the case, and which, in the argument of the case, was stated to be missing from the record, and was by agreement of counsel thereafter to be filed. No point was made in the agreement as to what the exhibit should contain. We presume that the exhibit contained what the original record consisted of. It appears that counsel contends that the clerk was only to furnish the list of absentee ballots and not the envelopes and the applications which were required to be used in the voting of absentee ballots. The absentee ballot law requires the application to be made to the clerk in the circuit court, and affidavit made, and the application and ballot to be placed in an envelope and taken by the voter before an officer, and there voted according to statute, and the application and the signature on the envelope to be used in comparing the signature of the voter by the manager at the election. We think the ballots, as used in this connection, mean, not only the printed ticket with the names of the candidates thereon, but the entire machinery necessary to make it a ballot. Furthermore, it was incumbent upon the appellee to show that the ballots were legal ballots, and, as we held in the opinion, the statute must be strictly followed, and the ballots must be applied for in the manner provided in the statute. It took this showing to have the absentee ballots counted, and no harm could come to the appellee by the holding in the opinion that no applications were made for the ballots as required by law, as there

was nothing to show that such application was in fact made.

It is further contended by the appellee that the contest here involved was not authorized by law, because it was an election to fill a vacancy in office, and that the court did not have jurisdiction of the subject-matter because the law did not authorize such a contest. We do not think this distinction can be made between a regular election and a special election. The contestants for office are as much interested in securing an office at a special election as at a regular election, and are entitled to have a fair and regular election, and a fair count, and a proper return.

We think the circuit court had jurisdiction to enter-tain the contest. Both suggestions of error will be over-ruled.