PRATHER *v.* DUCKER

No. 40080     November 2, 1955     82 So. 2d 897

*Laub, Adams, Forman & Truly,* Natchez, for appellant.

230

*Joseph E. Brown,* Natchez; *Charles Herring,* Meadville, for appellee.

Kyle, J.

This case is before us on appeal by Harvey Prather, the contestant, from a judgment of a Special Court of Franklin County affirming an order of the Franklin County Democratic Executive Committee refusing to declare the contestant the nominee of the Democratic Party for the office of Supervisor for District No. 2 upon the basis of the returns of the August 2, 1955 primary election, and ordering that the names of the contestant and John Ducker, the contestee, be placed upon the ballot as runoff candidates in the second primary election to be held on August 23, 1955.

The record in the case shows that there were three candidates in the August 2, 1955, Democratic primary for nomination for the office of Supervisor for District No. 2 of Franklin County, namely, John Ducker, E. L. McLemore and Harvey Prather. There were two voting precincts in the district, one known as the Hamburg precinct, and the other known as the Antioch precinct. The managers' returns showed that in the Hamburg precinct 93 votes were cast for the three candidates for supervisor; and of that number Ducker received 51 votes, McLemore 5 and Prather 37. In the Antioch precinct, the managers' returns showed 185 votes cast for the three candidates for supervisor; and of that number Ducker received 65 votes, McLemore 16 and Prather 104. One other ballot was dimly marked and not counted. When the County Executive Committee met on August 3 to canvass the returns, the votes were tabulated, and the tabulation showed that Prather had received 141 votes, McLemore 21 votes and Ducker 116 votes. Prather had a clear majority of 4 votes over his two opponents and was declared the nominee for the office of supervisor.

On August 5, the Committee met again for the purpose of making a recount of the votes cast in the sheriff's race; and while the votes were being recounted in the

sheriff's race, Ducker requested a recount of the votes cast for supervisor in District No. 2. There were no charges of irregularities in the holding of the election or the counting of the votes by the managers and clerks, but merely a verbal request for a recount of the votes by the committee. A recount of the votes cast in the two election precincts was made by the committee. The recount resulted in no change in the number of votes received by any of the candidates in the Hamburg precinct. But the recount of the votes in the Antioch precinct resulted in a loss of three votes by Prather and a gain of one vote by Ducker, and Prather's total vote was thereby reduced from 141 votes to 138. McLemore's total vote remained the same. Ducker's total vote was increased from 116 to 117. Prather appeared to be in a tie with his two opponents. Prather therefore requested a recount of the ballots in the Antioch box, and the committee agreed to recount the ballots.

The ballots in the Antioch box were recounted after the committee had finished the recount in the sheriff's race, and the second recount showed that Prather had received 103 votes, McLemore 16 votes, and Ducker 65 votes in the Antioch precinct. When these numbers were added to the votes received by the three candidates in the Hamburg precinct, which were not questioned, Prather's total vote amounted to 140 and the combined vote of his two opponents was 137. The committee, however, by a majority vote of its members, ordered that Prather and Ducker run the race over, "since the two tallies did not agree."

On August 9 Prather filed a formal complaint with the executive committee, in which he alleged that, although he had received a majority of three votes over the combined votes of the other two candidates according to the recount made by the committee, the committee had failed to declare him the nominee; that the committee's action was illegal and arbitrary and was based upon no facts or law; and Prather asked that the com-

mittee promptly meet and declare him the nominee. The committee met on August 13 for the purpose of hearing Prather's complaint, and after hearing the complaint the chairman announced that the box would not be opened, neither would the votes be counted again, and Prather and Ducker would be required to run the race over. The committee, by a majority vote, approved the announcement made by the chairman.

Prather, as contestant, then filed his petition for a judicial review, as provided in Section 3182, Code of 1942; and in his petition alleged the above mentioned facts. Ducker, as contestee, answered the petition on September 24. In his answer Ducker admitted that the managers' returns showed that Prather had received a majority of four votes over his two opponents in the first primary. Ducker, however, denied that Prather had received 140 votes and the other two candidates only 137 votes in the recount made by the committee on August 6; and he denied that it was the duty of the committee to declare Prather the nominee of the Democratic party for the office of supervisor upon the basis of the recount made by the committee. Ducker admitted that the committee had met on August 13, 1955, to consider Prather's complaint and had refused to declare Prather the nominee upon the basis of that complaint. But Ducker averred in his answer that he had received no notice of the filing of the complaint and had been afforded no opportunity to file an answer to the complaint. He also averred in his answer that Prather had participated in the second primary election on August 23 and in doing so had waived his right to object to the committee's action in ordering the second primary runoff in the supervisor's race.

The cause was heard by the special tribunal on September 26. We have before us a complete transcript of the testimony taken during the hearing.

It was expressly stipulated and agreed that the tabulation of the votes made by the managers in the Hamburg precinct was correct, and that Ducker had received 51 votes, McLemore 5 votes, and Prather 37 votes in that precinct.

Mrs. B. McMillan, the secretary of the Franklin County Democratic Executive Committee and a member of the county election commission, testified as the main witness for the contestant. Mrs. McMillan testified that the committee met on August 3, 1955, and canvassed the returns of the August 2 primary. Prather, as we have stated, was declared the nominee for supervisor for District No. 2 by a majority of four votes over the other two candidates. The witness testified that a special meeting of the committee was held on August 5 for the purpose of making a recount of the votes in the sheriff's race, and while the recount was in progress Ducker appeared before the committee and asked for a recount of the votes cast in the supervisor's race in District No. 2. The request was granted and a recount made of the votes cast in the supervisor's race. When the result of the recount was announced, Prather requested that a second recount be made of the votes cast in the Antioch precinct, and the second recount was made on the following day. The managers and clerks of the Antioch precinct were present. The second recount showed that Ducker had received 65 votes, McLemore 16 votes and Prather 103 votes in the Antioch precinct. The minutes of the meeting were read to the court, and the minutes showed that, "after much discussion between the supporters of each candidate," the committee then voted in favor of a proposal made by the chairman that Prather and Ducker run the race over, "since the two tallies did not agree."

The attorney for the contestant offered in evidence the ballot box of the Antioch precinct, which contained the ballots cast in the August 2 primary election; and the court was asked to examine and count the ballots cast

for supervisor. The box was opened and the votes were counted. All of the ballots which had been counted by the committee on August 6 were fastened together with a string. But there were two ballots in the box that were not on the string. As the count proceeded, objection was made to four of the ballots, which had been counted by the committee on August 6. Ballot No. 14, which was marked for Prather, was objected to by the contestee on the ground that it had been marked with a pencil that was not indelible. Ballot No. 101, also marked for Prather, was objected to by the contestee on the ground that it was marked with a singular perpendicular mark opposite Prather's name. And absentee ballot No. 17, which was marked for Prather, was objected to by the contestee on the ground that it was not marked by a check in the form of a ''V'' or a cross, but by filling in the blank box square completely with ink. The contestant's attorney then objected to ballot No. 99, which was marked for Ducker, on the ground that it had been marked with a pencil that was not indelible.

After the tabulation of the votes on the string had been completed, Mrs. McMillan was questioned about one of the two loose ballots found in the ballot box but not on the string. One of the ballots, which is identified in the record as Contestant's Exhibit 4, was plainly marked in ink by a cross placed opposite Prather's name and appeared to have been properly initialed by the initialing manager. Mrs. McMillan was asked to explain why that ballot was placed in the box but not on the string. Her answer was as follows: ''A. When we finished counting the tickets, we had three or four blurred tickets. We took those out and counted them, and when we finished this ticket was lying under the edge of the tally sheet. The tally sheet was lying here, and Mr. L. B. Seale was calling the tickets and he didn't notice it until after we finished. He picked it up and said, Here is a ticket for Harvey Prather. You cannot count that ticket, it was not there a while ago. I picked it up

and examined it and saw Mr. Ben McKinney's initials on it and I said, it has his initials on it just like the others, and they said you cannot count it. It and another one you saw in there that was faint and blurred, those two tickets were not counted."

Two witnesses were called to testify for the contestee. Thomas H. Shell, who was chairman of the County Democratic Executive Committee, testified that the recount of the votes by the committee made on Friday, August 5, was made without any interference, but that there was much disturbance during the recount on Saturday, August 6. The witness stated that the ballots were "all over the table and some of them dropped on the floor" and "everybody was handling them." The witness thought that the count made on Friday, which resulted in a tie between Prather and the other two candidates, was the real count. Fulton Harrigill, a member of the executive committee, testified that everything was quiet, and the committee had no trouble making the recount of the votes on Friday. The committee, however, was unable to satisfy themselves about some of the ballots, and four of the ballots which had been counted by the managers were discarded during the recount. But these ballots, over the witness' protest, were "brought to the front" again on Saturday and were included in the Saturday's recount.

At the conclusion of the hearing the presiding judge dictated into the record his findings of fact and his conclusions of law. The presiding judge stated that the recount of the ballots made by the court showed that Prather had received 102 votes, McLemore 16 votes and Ducker 65 votes, in the Antioch precinct, but that questions had been raised as to the validity of three votes cast for Prather and one vote cast for Ducker, and the court was of the opinion that the executive committee had "acted within their reasonable discretion" in ordering the second primary runoff. An order was therefore entered affirming the committee's action. The presiding

judge stated that the members of the county election commission, who had sat as members of the special court, were in disagreement among themselves concerning the issues being tried, and had taken no part in the decision rendered.

The presiding judge ordered that the original exhibits and the ballot box of the Antioch precinct, with its contents, be sent up with the record for examination by us on this appeal. A transcript of the testimony has been included in the bill of exceptions.

The statute governing appeals in cases of this kind (Section 3185, Code of 1942) provides that, ''If the findings of fact made by the special tribunal have been concurred in by all the commissioners in attendance, provided as many as two of the commissioners are and have been in attendance, the facts shall not be subject to review on appeal * * *. But if not so many as two of the commissioners are and have been in attendance or if one or more of the commissioners dissent, a transcript of the testimony may be filed with the bill of exceptions, * * * and the Supreme Court upon a review thereof may make such findings upon the facts as the evidence requires, giving only such consideration as the court may think warranted to the presumption of correctness of the conclusions of the trial judge.''

There were no charges of fraud in the conduct of the election in the case that we have here. There was no charge that any of the election officers had undertaken to manipulate the election returns for the purpose of electing or defeating any candidate. There were no charges that illegal votes had been cast by persons who were not entitled to participate in the election, or that any qualified electors had been deprived of their right to vote. The only questions which the executive committee had to consider, when the recounts were made by the committee, and the only questions which the special tribunal had to consider, were questions relating to the manner in which the voters had marked their ballots.

■■ The appellant's attorneys argue that the committee had no right to reject any ballot which the managers had counted, unless such ballot had been specifically challenged by the contestee. But, in this case, no contest had been filed at the time the committee made its recount of the ballots, and if a recount was to be made it was the duty of the committee to make a correct recount, and only ballots which had been properly marked should have been included in the recount.

Section 3269, Code of 1942, as amended by Chapter 306, Laws of 1948, provides that the voter shall prepare his ballot ''by marking with ink on the appropriate margin or place a cross (X) opposite the name of the candidate of his choice for each office to be filled.'' As an alternative method, a voter may, at his option, prepare his ballot ''by marking with ink or indelible pencil in the appropriate margin or place a check, in the form of and similar to a ''V'' opposite the name of the candidate of his choice for each office to be filled.'' It is expressly provided, however, that ''the voter must use either one of said methods throughout his ballot.''

■■ The committee in making the recount of the votes in this case had a right to reject ballots which were not properly marked according to the provisions of the statute. But the committee had no right to reject ballots which were properly marked and which had been counted by the managers of the election and were not shown to be invalid.

■■ The appellee's attorneys, in seeking to justify the action of the committee in refusing to declare the appellant the nominee upon the basis of the committee's second recount of the votes, say that, since there was a variance between the first and second count made by the committee and the committee was unable to determine whether Prather had received a majority of the votes cast, the committee had a right to exercise its discretion and order Prather and Ducker to enter a runoff primary. But this contention is unsound. The ballots which had

been counted by the managers were plainly marked; and it was the duty of the committee to make a fair and accurate recount of the ballots and upon the basis of that recount determine whether Prather had received a majority of all the legal votes cast in the election for supervisor.

It seems clear from the record that we have before us that the recount made by the committee on August 5, which resulted in a tie between Prather and the other two candidates, was incorrect in at least one respect, and that is, that the recount made by the committee showed 66 votes for Ducker in the Antioch precinct, while every other count made showed that Ducker received only 65 votes in the Antioch precinct.

We have the ballot box of the Antioch precinct before us and have examined its contents.

We have examined the two ballots referred to in the trial judge's opinion as ballots objected to because they were marked with a lead pencil. One of these ballots is marked for Prather and the other for Ducker. Both ballots in our opinion were marked with an indelible pencil and both ballots should have been counted. The ballot marked with a straight line should have been rejected. Guice v. McGehee, 155 Miss. 858, 124 So. 643. And the absentee voter's ballot No. 17, marked by a square ink spot mark placed opposite the name of the candidate, should have been rejected. Guice v. McGehee, supra. The ink spot mark has every appearance of having been made by design and not by accident or in an effort to make a cross mark or a check mark. Both of these last mentioned ballots were voted for Prather.

The loose ballot marked as Contestant's Exhibit 4 should have been counted. The fact that the ballot had been left off the string and was later found during the recount of August 6 lying under the tally sheet did not affect its validity. The ballot was plainly marked with ink by a cross (X) placed opposite Prather's name. It was properly initialed by the initialing manager.

There is no proof in the record to warrant a finding that the ballot had been surreptitiously placed on the table by an outside partisan for the purpose of making more certain Prather's nomination. It would be strange indeed if the court should hold that a ballot could be rejected upon a recount by the executive committee merely because the committee had inadvertently permitted such ballot to become separated from the other ballots while the count was being made.

The tabulation made by the presiding judge of the ballots which were strung together showed that Prather had received 102 votes, McLemore 16 votes, and Ducker 65 votes, in the Antioch precinct. Our own tabulation of the ballots which were strung together shows that Prather received 103 votes, McLemore 16 votes, and Ducker 65 votes. That tabulation does not include either of the two unstrung ballots. When the ballot identified as Contestant's Exhibit 4 is included in the tabulation, Prather's vote in the Antioch precinct is increased to 104, which is the number of votes cast for him according to the count of the election managers. But two of those ballots, as we have already stated, were not properly marked and cannot be counted. Prather's vote in the Antioch precinct is therefore reduced to 102. Ducker's vote in the Antioch precinct was 65. When the votes cast for each of the candidates in the Hamburg precinct and the Antioch precinct are added together, the total number of votes shown for each of the three candidates is as follows: Prather 139, McLemore 21, and Ducker 116, which gives Prather a clear majority of two votes over his two opponents.

Section 3109, Code of 1942, provides that, "Any candidate who receives the highest popular vote cast for the office which he seeks in the first primary shall thereby become the nominee of his party for such office; provided also it be a majority of all the votes cast for that office." It is only when no candidate receives such majority of popular votes in the first primary that the

two candidates who receive the highest popular vote for such office shall have their names submitted as candidates in the second primary.

██ ██ The committee had no authority to order that the two candidates who received the highest popular vote for supervisor in this case have their names submitted as candidates in the second primary, merely because the two tallies made by the committee did not agree. As we have already stated, it was the duty of the committee to make an accurate recount of the votes; and since the first recount made by the committee changed the result of the count made by the managers of the election in the Antioch precinct, Prather had a right to request another recount for the purpose of verifying the accuracy of the committee's first recount. The record does not show what ballots were rejected by the committee in its first recount of the ballots, which reduced Prather's vote in the Antioch precinct from 104 to 101. But the increase of Ducker's vote from 65 to 66 seems to have been due to an error in the committee's tabulation of the votes during the first recount, since no other count showed that Ducker received more than 65 votes in the Antioch precinct.

The contestant, having received a majority of all the valid votes cast for the office of supervisor for District No. 2 in the first primary on August 2, 1955, was entitled to be declared the nominee of his party for that office, and the County Democratic Executive Committee should have declared him the nominee. The presiding judge of the special tribunal therefore erred in his holding that the executive committee had a right to declare the election a tie and order Prather and Ducker to have their names submitted as candidates in the second primary.

██ ██ The judgment of the special tribunal is therefore reversed, and a judgment will be entered here declaring the contestant the nominee of the Democratic party for the office of supervisor for District No. 2. The

county election commissioners shall take judicial notice of the judgment thus entered, and Prather's name shall be placed upon the ballot in the November 1955 general election as the nominee of the Democratic party for that office.

Reversed and judgment rendered for the appellant.

*Lee, Arrington, Ethridge* and *Gillespie*, JJ., Concur.