517 So.2d 573 (1987)
Lyonel (Cotton) WADE
v.
Frank WILLIAMS, Jr., and Tishomingo County Democratic Executive Committee.
No. 58629.
Supreme Court of Mississippi.
December 16, 1987.
Rehearing Denied January 6, 1988.
*574 Orma R. Smith, Jr., Smith, Ross & Trapp, Corinth, for appellant.
Michael D. Cooke, Iuka, for appellees.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Lyonel "Cotton" Wade (Wade) appeals from the decision of the Special Tribunal declaring Frank Williams, Jr. (Williams), winner of the Second Democratic Primary election for the office of supervisor of District One, in Tishomingo County. Wade assigns as error that the Special Tribunal erred in counting ballots in which the voter did not follow the instructions printed on the ballot and that the Special Tribunal erred in determining the intent of the voter. Finding no merit in these assignments, we affirm.

FACTS
This is a Second Democratic Primary election contest between Wade and Williams, for the office of supervisor of District One, Tishomingo County, held August 25, 1987. The ballot format was created to enable the votes to be counted by an electronic counting device known as an optical mark reader (OMR), pursuant to Miss. Code Ann. § 23-15-501 et seq. (Supp. 1987), and this is only the second time it had been used in that county. An arrowhead and feather pointed to each candidate's name, with a blank space in the shaft of each arrow. The voter was instructed to fill in the blank space of the shaft of the arrow pointing to the name of the candidate for whom he was voting.
On August 26 Williams was declared the party nominee by the county executive committee. There was no other party or independent opponent for this office in the general election.
On August 31 Wade gave notice of application for full examination of the ballot boxes and thereafter filed a formal contest to the certification of Williams as the nominee pursuant to Miss. Code Ann. § 23-15-911 (Supp. 1987). On September 19 some members of the Tishomingo County Democratic Executive Committee met and reaffirmed their August 26 decision announcing Williams as the nominee. On September 21 Wade filed a petition of protest with this Court within requirements of Miss. Code Ann. § 23-15-927 (Supp. 1987). Pursuant to Miss. Code Ann. § 23-15-929 (Supp. 1987), Hon. Anthony T. Farese, chancellor for the 18th District, was appointed by our Chief Justice to preside over a special tribunal, consisting of Judge Farese and the election commissioners.
Of the 1,880 ballots cast, the parties eventually agreed to all but 53 ballots. Without considering these 53 votes, the candidates' total votes were:

 Wade ......... 921
 Williams ....... 909

*575 Two of the ballots contested by Williams was because of alleged registration deficiencies. These ballots were voted in favor of Wade and held valid by the special tribunal. The other 51 contested ballots were contested because of the way in which the voter had marked the ballot. The ballots had been voted in various ways: by placing an "X" by the candidate's name; by placing a check mark by the candidate's name; by underlining the candidate's name, by circling the arrow adjacent to the candidate's name; and by drawing an arrow from the tip of the arrow to the candidate's name. The chancellor, along with all five of the election commissioners, concluded that of the 53 contested ballots, Wade should receive 18 votes, Williams should receive 32 votes, and three votes were invalid. Two of Wade's votes allowed were, as above noted, the ones challenged for delinquent registration. The vote total, as determined by the Special Tribunal was:

 Williams ......... 941
 Wade ........... 939

LAW

EFFECT OF FAILURE TO FOLLOW DIRECTIONS IN MARKING BALLOT
Wade first contends that only those ballots where the shaft of the arrow was properly filled in should be counted. Years ago voters were instructed to write the name of the person he intended to vote for on a slip of paper. Code 1857, Ch. IV, § 12. Later, this State thereafter changed to a printed ballot; statutes required the voter to place an "X" opposite the candidate of his choice and if any other type mark was made, this technical violation invalidated the ballot. Our earlier cases so held. Code of 1892, § 3664. Carver v. State ex rel. Ruhr, 177 Miss. 54, 170 So. 643 (1936); Kelly v. State ex rel. Kierskey, 79 Miss. 168, 30 So. 49 (1901). Thereafter, the Legislature authorized more than just a simple "X" for the voter to indicate his choice. Miss.Code Ann § 23-5-151 (1972). This Court then held in determining whether a ballot should be discarded, that if a voter's intention could be reasonably determined, it would be counted. Only where it was impossible to determine the voter's intent was the ballot to be discarded. See: Anders v. Longmire, 226 Miss. 215, 83 So.2d 828 (1955); Starnes v. Middleton, 226 Miss. 81, 83 So.2d 752 (1955); Tonnar v. Wade, 153 Miss. 722, 121 So. 156 (1929). This is the present rule as to non-machine ballots.
It is a criminal offense, however, for a voter to place a "distinguishing mark" on his ballot to indicate his identity and this Court has consistently invalidated any ballot with identifying marks regardless of whether the other marking was correct. Code of 1892, § 3668 and Miss. Code Ann § 23-15-555 (Supp. 1987). Prather v. Ducker, 225 Miss. 227, 82 So.2d 897 (1955); Guice v. McGehee, 155 Miss. 858, 124 So. 643 (1929).
The obligation of a Court is to give effect to every ballot from which the intent of the voter can be ascertained. Accord: Montgomery v. Henry, 144 Ala. 629, 39 So. 507 (1905).
[A] number of courts have declared that if the intention of the voter can fairly be ascertained from his ballot and it appears that he acted honestly, the voter will not be disfranchised or deprived of this right to vote through mere inadvertence, mistake or ignorance even though the marking is not in strict conformity with the law.
26 Am.Jur.2nd Elections, § 257.
As to how OMR ballots are to be marked, there is little statutory direction. The applicable statutes referring to OMR are Miss. Code Ann. § 23-15-501 et seq. (Supp. 1987). These statutes make no specific requirement as to how the ballots should be marked by the voter. The statutes do, however, provide guidance for the election holders. The statutes require that each ballot contain "a set of instructions that will be so displayed that a voter may readily learn the method of voting." Miss. Code Ann. § 23-15-507 (Supp. 1987). The statutes further require that "Each voter shall receive written and/or verbal instructions by the voting precinct election official instructing the voter how to properly vote the paper ballot before they enter the voting *576 booth." Miss. Code Ann. § 23-15-517 (Supp. 1987). While it would be wise for voters to follow election holder's directions, the fact that the directions are not followed should not void the ballot if the voter's intent can be ascertained. These "damaged ballots" which have been rejected by the OMR tabulating equipment are to be examined to determine the voter's intent. Miss. Code Ann. § 23-15-523 (Supp. 1987). We, therefore, come to determine whether the intent can be ascertained.

DETERMINATION OF INTENT
Wade argues, as a matter of law, that the intent of voters of certain contested ballots cannot be ascertained and that this is not a factual finding but a legal question. We do not agree. Determination of intent is by its very nature a fact inquiry. See Anders, supra. While it may be true that this Court is in as good a position as the Special Tribunal to determine intent from examination of the contested ballots, Miss. Code Ann. § 23-15-933 (Supp. 1987) imposes factual this inquiry upon the Special Tribunal. The pertinent portions of the statute states:
[I]f the findings of fact have been concurred in by all the commissioners in attendance, provided as many as three (3) of the commissioners are and have been in attendance, the facts shall not be subject to review on appeal, and the bill of exceptions shall not set up the evidence upon which the facts have been determined. But if not so many as three (3) of the commissioners are and have been in attendance or if one or more of the commissioners dissent, a transcript of the testimony may be filed with the bill of exceptions, or within such short time thereafter as the Supreme Court may allow, and the Supreme Court, upon a review thereof, may make such finding upon the facts as the evidence requires, giving only such consideration as the court may think warranted to the presumption of correctness of the conclusions of the trial judge.
As stated by this Court in Riley v. Clayton, 441 So.2d 1322, 1326 (Miss. 1983):
The instant statute is obviously designed to expedite the appeals process in an election case. The necessity for expediency is inherent in the nature of an election contest. By limiting appellate review, the legislature's intent was obviously to hasten the final determination of the election contest while still permitting some form of appeal ...
See also: Berryhill v. Smith, 380 So.2d 1278 (Miss. 1980); Anders, supra; and Prather, supra.
Our duty is to respect the Special Tribunal's findings and this Court cannot say that the Special Tribunal was manifestly wrong in its determinations. The vote for the office of supervisor of District One, Tishomingo County, as determined by the Special Tribunal is, therefore, affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.