### THE STATE OF CONNECTICUT, *ex relatione* FREEMAN KILBOURN *against* SAMUEL TUDOR, jun.

MOTION for a new trial.

This was an information in nature of a *quo warranto,* in behalf of the state, at the relation of *Freeman Kilbourn,* against the defendant, for usurping, using and exercising the office of first director of the *Hartford Bridge Company.*

It was stated in the information, that in the year 1808, the General Assembly incorporated the *Hartford Bridge Company,* and invested them, their successors, heirs and assigns, with the power of appointing such officers, and establishing such by-laws and regulations, as they should deem necessary for their government, not contrary to their charter, or the laws of this state ; that at the first meeting of the corporation, held pursuant to their charter, on the 27th day of *April,* 1809, they proceeded to enact certain by-laws and regulations for the government of the corporation, by one of which it was provided, that on the first *Monday* of *June,* annually, a president and four directors should be elected from the stockholders, to manage their affairs ; and that a clerk should also be elected at such annual meetings ; that at an annual meeting of the corporation, held on the first *Monday* of *June,* 1811, *Freeman Kilbourn,* the relator, was elected first director of the corporation ; who accepted the appointment, and claimed to be admitted and declared a director of the corporation.

It was also stated, that notwithstanding the election of the relator, as above mentioned, *Samuel Tudor,* jun., the defendant, on the first *Monday* of *June,* 1811, did, without any legal warrant, use and exercise, and did continue to use and exercise, the office of first director of the corporation, for the year then ensuing ; and did claim to be first director of the corporation, and to have, use, and enjoy all the liberties, privileges and franchises belonging and appertaining to the office of first director, as aforesaid.

VOL. V.                        R r

*A by-law, enacted by a corporation, whose object is the acquisition of property, authorising the stockholders, in all their meetings, to vote by proxy, is a valid by-law.*

*Quere,* whether the stockholders of such a corporation, may vote by proxy, without a by-law for that purpose ?

In an information, in nature of a *quo warranto,* against an officer of an incorporated company, charging him with having usurped the franchises of the office, the court will not grant a new trial, for a misdirection, if it appears, that the term of the office has expired, and a new annual election of officers has been made.

The defendant alleged in his plea, that at the annual meeting of the corporation, in *June*, 1811, he was elected first director for the year then next ensuing ; that he accepted the appointment, and by that warrant, did use and exercise, and continued to use and exercise, the office of first director of the corporation, in the manner set forth in the information. The issue being closed, the jury returned a verdict for the defendant.

On the trial of this cause, before the Superior Court, the prosecutor read in evidence, the charter of the *Hartford Bridge Company*, which, after constituting the petitioners, their associates and successors, a body corporate, gave them power to appoint such officers, and to establish such by-laws and regulations, as they might deem necessary for the corporation, not contrary to their charter, nor to the laws of this state, and subject to be repealed, by the Superior Court, at any session thereof in the county of *Hartford.* The charter also provided, that the members of said company should be entitled to as many votes as they should hold shares in the stock of said company ; but it was silent as to the mode of voting.

The prosecutor also read in evidence, a by-law of the corporation, enacted on the 20th day of *September*, 1810, by which it was provided, " that at all future meetings of said company, the vote should be determined, by the majority of the shares, which each vote should represent, either as his own property, or as attorney for other persons."

The prosecutor also read in evidence, a power of attorney, dated the 11th day of *December*, 1809, made by *Joseph Lathrop* and others, of the city of *New-York*, stockholders of the corporation, and owners of stock to the number of 245 shares ; by which one *Gaius Lyman* was constituted their attorney, and fully authorised to vote for them, on their several shares, in the election of officers of the corporation.

It was admitted, that on the ballot for the choice of first director, *Lyman* offered and tendered his vote for the relator, in pursuance of his power, and that the presiding officer re-

jected his vote, and the ballot being closed, declared the
defendant to be duly elected to that office.

It was also admitted, that the number of shares represented
by *Lyman*, at the ballot, exceeded the number of shares rep-
resented by all other persons present, and voting, at the
election.

It was claimed by the defendant, that at the date and ex-
ecution of the power to *Lyman*, no by-law of the corporation
existed, by which the stockholders could vote by proxy.

The court, in their charge to the jury, instructed them
that the law was so, that *Lyman* was not entitled, by virtue
of the power of attorney from *Lathrop* and others, to vote in
the election of officers of the corporation, because the stock-
holders could not vote by proxy ; and directed them to find
a verdict for the defendant. The prosecutor moved for a new
trial, on the ground of a misdirection ; and the question was
reserved for the consideration of the nine Judges.

The principal question discussed by the counsel for the
prosecutor, on the hearing of the motion, was, whether the
stockholders of the *Hartford Bridge Company* were entitled
to vote by proxy ?

*N. Terry* and *Mitchell*, in support of the motion.

*Daggett* and *J. W. Edwards*, contra.

INGERSOLL, J. This was a motion for a new trial, on the
ground of a misdirection to the jury, on a point of law. The
suit was an information in nature of a *quo warranto*, against
the defendant, stating that he had usurped the office of first
director of the *Hartford Bridge Company*, and praying that
he might be ordered to show by what warrant he held the
same. The great question in the case was, whether it was
competent for the members of the company to vote by proxy,
in the choice of their officers ? If they were authorised so to
vote, by their charter of incorporation, or by any by-law under
it, then the verdict ought to have been in favour of the

June, 1812.

THE STATE
v.
TUDOR.

plaintiff : If otherwise, it ought to have been, as in fact it was, in favour of the defendant.

The court charged the jury, that no votes could legally have been given by proxy ; and that therefore, as, without counting such votes, the defendant had the greatest number for first director, the verdict ought to be in his favour.

There were also some other points in the case, but this being the leading one, and being also *that* on which the opinion of this court is particularly desired, I shall confine my observations almost entirely to it.

There is no clause in the act of incorporation empowering the members of the company to vote by proxy ; but as is usual in such acts ; there is power given to " establish such by-laws and regulations as they may deem necessary for the government of the corporation, not contrary to the charter, or the laws of this state, and subject to be repealed by the Superior Court, at any session in the county of *Hartford*."

There was also a by-law, duly made and passed by said company, on the 20th day of *September*, 1810, which was previous to the time when the choice in question was made, providing, that at all future meetings of said company, " the vote should be determined by the majority of the shares, which each vote should represent, either as his own property, or as attorney for other persons." This by-law has never been repealed.

In the discussion of this question, it has been urged, on the one side, that it was incident to this corporation, as well as to every other corporation, the object of which is the acquisition of property, as a matter of course, that votes might be given by proxy : But, at any rate, that after making the by-law above mentioned, there could be no doubt as to such right.

On the other side, it was said, that such common law right did not exist ; but that it was a fundamental principle in corporations of every kind, that votes should be given in person, and never by proxy ; that this being the common law, was then the law of this state ; and that no by-law au-

thorising votes to be given by proxy could be valid, the same being contrary to the laws of this state.

My opinion is, that the charge was incorrect, and that in the case under consideration, the votes given by the attorney for his principals, ought to have been received. How the point would have been determined, had there been no by-law passed, it is unnecessary to say. So much, however, I think may be said, that those incorporated societies, whose object is the acquisition of property, stand on a different ground as to this question, from those of every other kind : That is to say, it is not so clear, that every vote given in a corporation of the former kind must be personal, as it is that it must be so, in one of the latter. I agree most fully, that by the common law, every vote given in a corporation instituted for the public good ; either the good of the whole state, or of a particular town or society ; must be personally given. So also, every vote given by a freeman for his representative, must be given by him in person. There is no deviation from this rule ; the authorities on this subject are uniform. Neither can a vote be given in a town or society meeting, merely on the ground of owning property within the limits of such town or society. But from the very nature of a monied institution, the mere owning of shares in the stock of the corporation, seems, of course, to give a right of voting. But whatever might have been the result of reasoning on the nature of monied institutions, still, since the passing of the by-law above mentioned, I am very clear, that the votes for the officers of this corporation, as well as all other votes relative to it, may be given by proxy.

If this by-law be contrary to the laws of this state, it certainly has no validity. It is not a settled principle, however, that a by-law must never modify or vary the rights of individuals, lest it should be contrary to the laws of the state. According to such a principle, no valid by-law whatever could be made. No ; all by-laws of a minor corporation are good, that are reasonable, and calculated to carry into effect the objects of the institution, and are not contradicto-

June, 1812.

THE STATE
v.
TUDOR.

ry to the general policy of the laws of the land. That the by-law in the present case is reasonable, may be argued from a power being given by the legislature, to vote by proxy, in all the bank incorporations in this state. That it is calculated to carry into effect the objects of the institution, and is not contradictory to the general policy of the law of the state, may be argued from the same facts. For if such were not the character of this by-law, the legislature would never, in the instances mentioned, have granted the power so to vote.

Again, in order to shew more clearly, that this by-law is a valid one, it may be proper to take into consideration, what are the powers, rights and privileges of each individual of a voluntary association of men, entered into for the purpose of carrying on business. It is very clear, that any one of these individuals, thus associated, may authorise any person to act for him in his absence, in all matters relative to the subject matter of the association. All trading companies and joint partnerships stand on this ground. In this very case, if every one of the persons who are incorporated into a bridge company, had, without any act of incorporation, united together for the purpose of building the bridge, which the company has built, and to share in the profits ; each one might have empowered another to act for him in his absence. This principle is so plain, that, I think, it cannot be denied. Is it not, then, very absurd to say, that these rights are all taken away, the moment that an incorporation takes place ? Perhaps, it may be said, that if my principles and deductions are correct, a voting by proxy would be authorised, without any by-law for that purpose. This point I have no need to press. So much, however, may be claimed, and as it strikes me, the claim is irresistible, that a by-law giving such authority, is, and must be, to all intents and purposes, good.

Further, to shew that this by-law is valid, we need but to compare some of the essential qualities of monied corporations with those of other corporations, such as towns and societies. It is essential, that all the voters in a town or society,

should live within the respective limits of such town or society. It is requisite also, that, besides the qualifications in point of property, they should all be males, and of the age of twenty-one years. A by-law, therefore, of a town or society empowering females or minors, or any one living out of the limits of the town or society, to vote, whatever property he might have within such limits, would be utterly void. Such a by-law would be contrary to the laws of the state. In monied corporations, however, it is of no consequence where the stockholders live, whether in this state or in any of the *United States*, or in any foreign state or kingdom. Whether they be males or females; both sexes holding shares, are equally entitled to vote. From the necessity of the case, therefore, it should seem, that a by-law, like the one under consideration, must be good. For, if it were otherwise, it would very frequently happen, that many of the stockholders would never be able to vote at all.

In short, the difference between money corporations, and others, such as towns and societies, and all of the like kind, is so manifest, that the rules applicable to each are by no means similar. The former are but trading companies, with all the powers and privileges of such companies, and are incorporated to enable them to carry on their business with more advantage to themselves, as well as to the public. The latter, it is well known, are of a totally different character. Such being the case, there is no question in my mind, but that the by-law authorising the members of the company to vote by proxy, is a valid law. Nay, I should much more question the right of the corporation to pass a by-law restricting the right of voting, to the person. This would seem to me like subverting the fundamental principles of the institution. But of such a by-law I need give no opinion.

Though my opinion is, that the charge in the present case was incorrect, and the verdict wrong, yet I would not advise a new trial of the cause. The relator is not now kept out of any office, nor does the defendant now hold the office of first director, to deprive him of which, the prosecution was

commenced.   *The People*, ex relat. *Teel* v. *Sweeting*, 2 *Johns. Rep.* 184.   A new annual election of officers has taken place, and it is but a matter of costs between the litigating parties that a new trial would settle.   This object is not of sufficient magnitude to demand a new trial.   To settle the question, as to the right of voting by proxy, was, as I presume, the principal cause of the prosecution, and that can be well ettled, by the opinion of this court, without a new trial of the cause.

MITCHELL, Ch. J., SWIFT, TRUMBULL, SMITH and BRAINARD, Js., concurred.

REEVE, EDMOND and BALDWIN, Js., dissented.

New trial not to be granted.