# OPINION OF JUSTICES.

The unconstitutionality of the proposed act of the legislature of New-Hampshire, entitled, " An Act to secure the right of suffrage to the qualified voters of this State engaged in the military or naval service of their country," affirmed:

## STATE OF NEW-HAMPSHIRE.

HOUSE OF REPRESENTATIVES, June Session, 1863.

" *Ordered*, That the clerk be requested to furnish a copy of the bill entitled 'An Act to secure the right of suffrage to the qualified voters of this State engaged in the military or naval service of their country,' to each of the Justices of the Supreme Judicial Court, with the request that they will inform the House, at an early day, of their opinion concerning the constitutionality of the bill."

*To the House of Representatives :*

The undersigned, Justices of the Supreme Judicial Court, in accordance with the foregoing request, submit the following opinion :

The first section of the bill in question provides, that in time of war, &c., every qualified voter of the State engaged in the military or naval service of this State or of the United States, whose name is on the check-list of the town, &c., in which he has his home, who shall, on the day of any election for State, county and town officers, &c., be without the limits of this State, but in the actual service of the country, not having deserted or been dismissed therefrom, may be present by his attorney, and vote by ballot at any such election, at the meeting held for that purpose in the town, &c., where he shall have his residence at the time of such election, and where his name shall be on the check-list. The second section provides that every such voter shall, by a power-of-attorney executed by him within forty days next preceding the day of such election, authorize some legal voter of the town where he has his residence to cast for him his vote or votes, in the same manner as other votes are cast, for all officers for which he would have the right to vote by ballot if he were in person present at such election. This section also prescribes the mode in which such power-of-attorney shall be executed ; and it further provides that such voter shall make and attach to his power-of-attorney his affidavit in a form prescribed, which, in effect, sets out the facts that under these provisions entitle him to vote, and states that he has not empowered any other ˑ ₊rson

VOL. XLIV.          41

than the one named in the power-of-attorney to deliver any vote for him at such election, and also describes the name and station of the company, &c., to which he belongs.

The third section provides that such voter shall prepare and fold the ballot or ballots he may cast at such election, write his name on the back of each, with his residence and the name of the company, &c., in which he is serving, and transmit the same, with the power-of-attorney and affidavit, by mail or otherwise, to the person named in the power-of-attorney.

The fourth section provides that such attorney shall deliver such ballots to the moderator of the meeting, to be held for such election in the town, &c., where his principal has his residence, on the day of such election, and at the proper time for casting such ballots, and that the moderator shall receive them in the same manner as other ballots are received, and thereupon the town-clerk shall check the name of the principal, if the vote be taken by the check-list, and that the ballot or ballots shall be sorted, counted, declared, recorded and returned in the same manner and have the same effect as other ballots cast at such election. The fifth section enacts that the attorney, when he delivers such ballots to the moderator, shall also deliver to him, with the power-of-attorney, authenticated by the voter's affidavit, his own affidavit, in a form prescribed, and in substance stating that the attorney is a legal voter of the town, &c., and that the ballots presented by him as the votes of his principal are the identical ballots received by him from such principal, and that they have not been, to his knowledge or belief, exchanged, altered or effaced in any manner, and that this affidavit, with the power-of-attorney, &c., shall be filed by the town-clerk in the same manner that the check-list is to be filed.

By the sixth section, moderators refusing to receive, sort, count and declare such ballots, town-clerks refusing to record and return the same, or to check the names of such voters, and attorneys, wilfully refusing or neglecting to deliver such ballots, are made liable to fine or imprisonment, or both.

The seventh section provides the punishment for perjury by such voters or attorneys, and for forgery of such powers-of-attorney, &c.

The eighth section requires the Secretary of State to prepare and furnish the blank forms necessary under these provisions. The ninth section provides that the absence of such voter from the place of his residence, while engaged in such service, shall not affect his right of suffrage, and makes it the duty of the selectmen of the several towns, &c., to insert and retain upon the check-list the names of such voters, and provides a penalty for the omission to do so.

It is somewhat noticeable that the bill does not in terms limit the time for the preparation of any such ballots or powers-of-attorney to the month of March, nor provide for any revocation of the power-of-attorney, or any change of vote by the elector, nor does it contain any provision that his vote shall be rejected if the elector is not living on the day of the election.

By the common law, in elections of public and municipal corporations, and in all other public elections, every vote must be

personally given. 2 Kent Com. 294* (citing the case of the *Dean, &c., of Fernes*, Davies 129); Ang. & A. Corp. (3d ed.) 95–97; *Taylor v. Griswold*, 2 Green (N. J.) 226, 234, 235; *Phillips v. Wickham*, 1 Paige 578; *State v. Tudor*, 5 Day 333; see *Atty. Genl. v. Scott*, 1 Vesey 413. The history of the origin of the powers of towns in New-England, and of the nature and usages of their meetings, shows that in this respect the practice here, before and at the date of the adoption of the Constitution, was in accordance with the general rule of the common law. As the language of the Constitution is to be understood in the sense in which it was used at the time of its adoption, (Opinion of the Justices, 41 N. H. 551), and as at that time, both by the common law and by the settled usage here, the right of voting for public officers was a right that must be exercised personally by the voter at the meeting held for the purpose, it follows that, if no different provision is made in the Constitution, the right of suffrage established by it is to be exercised by the voter in person, at the meetings duly held for the purpose.

Our Constitution has the following provisions:

"The members of the House of Representatives shall be chosen annually in the month of March." Art. 12. "All persons qualified to vote in the election of senators shall be entitled to vote within the district wherein they dwell, in the choice of representatives." Art. 13. "The freeholders, &c., of each district qualified, &c., shall annually give in their votes for a senator at some meeting holden in the month of March." Art. 27. "The senators shall be chosen in the manner following: namely, Every male inhabitant of each town, &c., except, &c., shall have a right, at the annual or other meetings of the inhabitants of said town, &c., to be duly warned and holden annually forever in the month of March, to vote in the town, &c., wherein he dwells, for the senator in the district whereof he is a member." Art. 28. "Every person qualified, &c., shall be considered an inhabitant, for the purpose of electing and being elected into any office or place within this State, in the town, &c., where he dwelleth and hath his home." Art. 30. "The inhabitants of plantations, &c., qualified, &c., who are or shall be required to assess taxes upon themselves, &c., shall have the same privilege of voting for senators in the plantations, &c., wherein they reside, as the inhabitants of the respective towns, &c., have. And the meetings of such plantations, &c., for that purpose shall be holden annually in the month of March, at such places respectively therein as the assessors thereof shall direct; which assessors shall have like authority for notifying the electors, collecting and returning the votes, as the selectmen and town-clerks have in their several towns by this Constitution." Art. 31. "The meetings for the choice of governor, council and senators shall be warned by warrant from the selectmen, and governed by a moderator, who shall, in the presence of the selectmen, (whose duty it shall be to attend) in open meeting, receive the votes of all the inhabitants of such towns, &c., present and qualified to vote for senators, and shall, in said meetings, in the presence of the said selectmen, and of the town-clerk in said meetings, sort and count the said votes, and make a public

declaration thereof, with the name of every person voted for and the number of votes for each person, and the town-clerk shall make a fair record of the same at large, in the town book, and shall make out a fair attested copy thereof," &c. Art. 32. "The governor shall be chosen annually in the month of March, and the votes for governor shall be received, sorted, counted, certified and returned in the same manner as the votes for senators; and the Secretary shall lay the same before the Senate and House of Representatives, &c., to be by them examined, and in case of an election by a majority of votes through the State, the choice shall be by them declared," &c. Art. 42. "There shall be annually elected, by ballot, five councillors," &c. "The freeholders, &c., in each county, qualified to vote for senators, shall some time in the month of March give in their votes for one councillor, which votes shall be received, sorted, counted, certified and returned, &c., in the same manner as the votes for senators," &c. Art. 60. "And the person having a majority of votes in any county shall be considered as duly elected a councillor," &c. Art. 61. "The county treasurers and registers of deeds shall be elected by the inhabitants of the several towns in the several counties in the State, according to the method now practiced and the laws of this State," &c. Art. 71. "It shall be the duty of the selectmen, &c., in warning the first annual meetings for the choice of senators, after the expiration of seven years from the adoption of this Constitution as amended, to insert expressly in the warrant this purpose among the others for the meeting: namely, To take the sense of the qualified voters on the subject of a revision of the Constitution; and the meeting being warned accordingly, and not otherwise, the moderator shall take the sense of the qualified voters present as to the necessity of a revision; and a return of the number of votes for and against such necessity shall be made by the clerk, sealed up and directed to the general court at their then next session; and if it shall appear to the general court by such return that the sense of the people of the State has been taken, and that in the opinion of the majority of the qualified voters in the State, present and voting at said meetings, there is a necessity for a revision of the Constitution, it shall be the duty," &c., * * * * "provided that no alterations shall be made in this Constitution before the same shall be laid before the towns, &c., and approved by two thirds of the qualified voters present and voting on the subject." Art. 99.

These provisions of our Constitution, so far from showing an intention to depart from the general rule of the common law as to the personal presence of voters at public elections, seem to us to assume its applicability, and to require that the right of voting shall be exercised by the voter in person at the meetings duly held for the purpose in the places of the State pointed out by the Constitution, and at times in accordance with its provisions. It is also a somewhat significant fact, that no attempt, so far as we are aware, has ever before been made in this State to dispense with the necessity of the presence at the meeting of the town, &c., of each elector who shall exercise the right of suffrage.

Whether in every case the elector must cast his vote with his own hand, we need not inquire, for if it were allowable that the votes of infirm or disabled electors be deposited for them in their presence, it would by no means follow that this could be done for them in their absence : for "an act done by one, in the presence and under the control of another, for that other, is regarded not as the exercise of a delegated authority, but as the personal act of the party in whose behalf it was performed ;" but it is otherwise where the act is done by a person's direction, in his absence, and beyond his control. *Kidder* v. *Prescott*, 24 N. H. 263; *Hanson* v. *Rowe*, 26 N. H. 327.

We have thus far considered the provisions of this bill, as if they were in fact what they purport to be, provisions to allow the elector to vote by another in the meeting of the town, &c., in which he is entitled to vote; but the bill in effect permits the elector to vote at places other than those fixed, and at times different from those prescribed by the Constitution, and out of the meetings required by it for the purpose; and this, we think, is in conflict with its provisions : for by the articles which we have cited, an election is to be determined by the will of the voters qualified at the time fixed agreeably to the Constitution for the election, as that will then exists and is then expressed in the mode pointed out : but the effect of a statute in the terms of this bill might be to substitute in the election for such will, so expressed, the will of voters, who at various other times had been qualified electors, as it had at these various times existed, and been expressed beyond the limits of the State and in no meetings held in accordance with the requirements of the Constitution ; and such a substitution we regard as a violation of its terms and of its spirit.

These views are supported to a considerable extent by the opinions which we understand have been recently given by the courts of Connecticut and Pennsylvania. *Opinion*, &c., 2 Am. Law Reg. (N. S.) 460,473 ; *Chase* v. *Miller*, Ib. 146.

As these views lead us to the conclusion that this bill, in its most prominent feature, is in conflict with the provisions and the spirit of our Constitution, we have not deemed it necessary to consider whether it might also be objectionable, as unequal in its practical effects ; or as dispensing with those opportunities for conference and consultation, that have heretofore been deemed important, if not essential, to the successful practical operation of our institutions ; or whether it contains provisions otherwise in conflict with the fundamental law of the State.

SAMUEL D. BELL,
HENRY A. BELLOWS,
GEO. W. NESMITH,
WILLIAM H. BARTLETT.