## Case No. 4,808.

### FIRST NAT. BANK OF NORTH BENNINGTON v. DORSET.

[16 Blatchf. 62.][1]

Circuit Court, D. Vermont. Feb. 25, 1879.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Edward J. Phelps and George W. Harman, for plaintiff.

Charles N. Davenport and Tarrant Sibley, for defendant.

WHEELER, District Judge. This is a motion for a new trial, after a verdict for the plaintiff at the last term, and involves no question not involved either in First Nat. Bank of North Bennington v. Bennington [Case No. 4,807], or in Same v. Arlington [Id. 4,806], heard at the same time with this, except that in this it appears, that, after the required majority, or what the commissioners found to be such majority, had assented in writing, executed as required, and before the commissioners had certified to that fact, some forty of the tax payers executed, in the same manner that the assent was executed, what they called a recantation, notwithstanding their assent, which was shown to, and a copy of it taken by, the commissioners. The withdrawal of this number would leave the number assenting clearly below a majority. It is urged, that, after this, the commissioners had no authority to proceed with making the certificate, and that it was void, and that this would invalidate the bonds.

The provisions of the act, affecting this question, are, that no subscription, purchase or contract shall be made, "unless the assent in writing thereto of a majority of the tax payers * * * shall be obtained," and that, when obtained, the persons named in the assent for commissioners shall be commissioners, who shall append their certificate that a majority have assented, and that any contract made by such commissioners in pursuance of the terms of the assent, and not inconsistent therewith, shall be binding upon the town. There is no provision for any dissent after assent by any person, or for any mode of making such dissent known to the commissioners, if it should arise.

This method of obtaining an expression of the sense and will of the tax payers is treated by the supreme court of the state, in Bennington v. Park, 50 Vt. 178, and National Bank of St. Johnsbury v. Concord, Id. 257, as a mode of voting, in which all those assenting vote for, and all those not assenting vote against, the proposition in the instrument of assent. In that view, when a tax payer had executed the instrument of assent, he had exercised his right of voting and voted on that question. In all deliberative assemblies, each member has the right to change his vote upon any question, at any time before the vote is declared. Perhaps the voters, in this mode of voting,

would have the same right at any time before the result should be certified to by the commissioners. They would probably have it, unless the provisions for this method of voting have cut it off. Perhaps the legislature intended, by not providing any mode for changing any votes, that it should be cut off. But, if not, and the right was left, it could only be exercised in some proper mode. None of the dissenters went in person to the commissioners and made known their wish, or claimed any right to dissent. They merely executed an instrument in writing expressing their dissent, and sent that. If a voter in town meeting, or a member of a legislature, should, in absence, after voting on any question, and before the result of the vote should be declared, send, in writing, a change of his vote, probably no notice would be taken of it, however formal and solemn the execution of it might be. He would be required to be personally present, or compelled to leave the subject to stand, so far as he should be concerned, as it was when he was present. State v. Tudor, 5 Day, 329. In that case, Ingersoll, J., said: "I agree most fully, that, by the common law, every vote given in a corporation instituted for the public good, either the good of the whole state, or of a particular town or society, must be personally given. So, also, every vote given by a freeman for his representative, must be given by him in person. There is no deviation from this rule; the authorities on this subject are uniform." Even the right to vote by proxy in private corporations is not a general right, and authority for it must be shown by some law or by-law made pursuant to law. Ang. & A. Corp. § 130. Perhaps, if those desiring to dissent had gone personally to the commissioners, and claimed the right to withdraw their assent, and to take their names or have them taken from the assent, the commissioners would have been bound to heed them, and perhaps not; but, if they would, nothing of the kind was done, nor anything that would be an equivalent for it in fact, and nothing was provided by law that should, in law, be an equivalent. What they sent was, in its nature, mere hearsay. It was authenticated the same as the assent, but the law made the assent so authenticated equal to a vote, and did not make a withdrawal so authenticated equal to a change of vote. There was no law requiring the commissioners to regard, or authorizing them to act upon, the recantation.

Further than this, the law made the decision of the commissioners final; and the supreme court of the state has construed this law as making it final for all purposes, where others are concerned, however erroneously they may have acted in making it. Aldis v. Lamoille Valley R. Co., cited 50 Vt. 281. And, still further, if there was misconduct, or fraud even, of these commissioners, as their recorded proceedings were regular on their face, it would not affect the rights of a

bona fide holder of the bonds. East Lincoln v. Davenport, 94 U. S. 801.

The motion is overruled and judgment entered on the verdict.