A. J. Hilliard

*v.*

L. H. Park et al.

Donald Mantooth

*v.*

L. H. Park et al.

Harvey Williams

*v.*

L. H. Park et al.

W. L. Wooten et al.

*v.*

L. H. Park et al.

Robert Beckler

*v.*

L. H. Park et al.

Richard Moorehouse

*v.*

L. H. Park et al.

370 S. W. 2d 829.

(*Knoxville,* September Term, 1963.)

Opinion filed September 11, 1963.

Petition for Rehearing Denied October 11, 1963.

592

R. R. Kramer, R. Arnold, Kramer, Carter B. Wall, Kramer, Dye, McNabb & Greenwood, Knoxville, for petitioners in error.

William B. Felknor, Maryville, for defendants in error.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

These six cases are election contests and were tried together in the Circuit Court of Polk County because basically the same question was involved in each case. The Sheriff, Circuit Court Clerk, the Registrar of Deeds, County Court Clerk and two Constables received the majority vote in the election of August 2, 1962, in Polk County. Their opposing candidates filed these respective suits to contest their respective elections. These cases were tried by the Circuit Judge without hearing proof, except certain statements of counsel, upon the petitions, demurrers, answers, etc., and certain stipulations of fact. Basically the question here involved comes down to the proposition that the petitions averred that there were included in the number of votes received by the victorious contestees, the Democratic candidates for the county-wide offices, 1,028 illegal and void absentee ballots; that there were a certain number of ballots cast for the Constables in each of the districts in which they were elected and that their ballots were proportionately increased by a part of these 1,028 illegal and void absentee ballots (whatever number cast in respective district). These ballots were alleged and averred to be void and illegal because the applications therefor failed to state a reason for the applicants' expected absence from the county on the day of election, or failed to have attached thereto a certificate of a physician or a registrar.

The first ground of the demurrer goes to the heart of this question, that is, whether or not the applicable statutes of the State of Tennessee require that applicants for

absentee ballots state on their application the reason for expecting to be absent from the county on the day of the election.

Of course, there are numerous other allegations made in the various petitions, questions raised, etc., but essentially and basically this question determines these lawsuits.

In considering this question the trial judge, after deducting from these 1,028 absentee ballots 54 ballots, representing a number that were in the armed forces and 5 who had voted in this number on the basis of a doctor's certificate, leaving thus 969 said absentee ballots, held that these were illegal and void because the applications therefor did not state a reason for the applicants' expected absence from the county on the day of the election. Thus when this number of votes was taken from the total vote received by the respective candidates and in the Constable districts, they had not received a majority of the votes cast and consequently the election was void. In other words the election in all these instances would have been altered if these 969 ballots had been cast for the contestants and thus the election was void.

■ Of course, holding thus simply means that the incumbents in these offices at the time this election was held void will hold over until their successors are elected and qualified by law. *Conger v. Roy,* 151 Tenn. 30, 267 S.W. 122.

■ The contestants have likewise appealed and assigned error due to the fact that the trial judge after holding as above didn't declare them elected on the basis of holding these 969 absentee ballots void. The argument in response to this assignment is that there was no

showing how these 969 absentee ballots were cast, whether for the contestants or the contestees. This record, as made up, does show that these 1,028 ballots were marked by the Commissioners as Democratic ballots and the contestees were the Democratic candidates and thus it might be argued that there is an assumption that all the ballots were cast for them. Of course, in a contest of this kind such a presumption cannot be given legal validity, because this is not necessarily always true. In modern times many voters vote for either one or the other side of the contest. Because they are denominated as Democrats does not necessarily say that they voted for all Democratic candidates. Another thing, too, the trial judge here was not justified under this record in declaring contestees elected even though these ballots were held void. His judgment in the matter is justified. We therefore overrule and deny the contestants' assignments and application to be declared elected.

These causes for the first time bring to the attention of the Court a construction of the absentee voting statute of this State. This statute is Chapter 164, Public Acts of 1949, as codified beginning at sec. 2-1601, T.C.A. et seq. We find in the record a well thought out, well reasoned and excellent memorandum opinion of the trial judge on the questions involved. This opinion shows that he had given the matter much thought and research. In our reading of this record we have read the briefs of both sides two or three times, have read the entire absentee ballot voting act once or twice and the main sections here involved several times. After spending more than a week working on this case we have concluded that the trial judge has reached the correct legal conclusion and his

reasoning is so apt that we in this opinion are going to adopt as our opinion a large portion of his opinion.

■■■■ In the outset the Legislature by Section 1 of the Act, which is codified as sec. 2-1601, T.C.A., stated its intention in passing this absentee voting law. It is clearly shown by reading this Section that the intent of the Legislature in passing such an Act was to prevent fraud in elections by use of absentee votes, and in doing so the judges of the election were specifically directed to receive no absentee votes unless this Act had been literally complied with, and all of its provisions were mandatory. This very Section within itself shows that it was the intention of the Legislature in enacting this Act that the Act should be given a strict construction rather than a liberal construction. As said by the Supreme Court of Florida, speaking through its Chief Justice, in *State ex rel. Whitley v. Rinehart,* 140 Fla. 645, 192 So. 819, "Election laws should be construed liberally in favor of the right to vote but this is not the rule as to absentee voting laws. Being in derogation of the common law, they should be strictly construed. The reason for the difference is that purity of the ballot is more difficult to preserve when voting absent than when voting in person. *Guice v. Mc-Gehee,* 155 Miss. 858, 124 So. 643, 125 So. 433; *Straughan v. Meyers,* 268 Mo. 580, 187 S.W. 1159; *In re Baker,* 126 Misc. 49, 213 N.Y.S. 524; Opinion of Justices, 44 N.H. 633." This is the general rule though there are some cases to the contrary but upon reading them we generally find that there are factual situations which shade or bring about probably a different interpretation. The Florida court further said: "This must be the rule; otherwise purity of the ballot is cast to the discard." See also on the subject Sutherland on Statutory Construc-

tion, 3rd Ed., Horack, sec. 7215, page 455, which section concludes with a quotation from a New York case thus:

"Recognizing the supreme importance of the right of franchise in our democracy and zealous in guarding the exercise thereof against anything and everything of a doubtful nature, the courts, in an endeavor to keep elections, primary and general, free from fraud, have uniformly insisted upon strict compliance with provisions of the Election Law. * * *"

Then we quote, which seems to us, a very reasonable statement from the Nebraska court in *Miller et al. v. Mersch,* 152 Neb. 746, 42 N.W.2d 652, thus:

"It is the policy of the law to prevent the disfranchisement of qualified electors who have cast their ballots in good faith by requiring only a substantial compliance with the election laws of the state. The privilege of voting, though the voter is absent from the voting precinct at the time of the election, requires a departure from the general rule governing the method of exercising the right to vote. Voting by mail constitutes a special privilege and requires a stricter adherence to the legislative conditions imposed upon its exercise.

"Compliance with the conditions imposed by the statutory grant is essential to the exercise of the right. The act itself prescribes the manner of its exercise when it states that an absentee elector may vote at such election only in a manner prescribed in the act." (Citing authorities).

This statement absolutely confirms the first Section of this absentee voting law of our State, above referred to.

On this same subject we likewise turn to a Minnesota case, that of *Wichelmann v. City of Glencoe,* 200 Minn. 62, 273 N.W. 638, where a number of very pertinent observations are made in reference to the question here being discussed. Among other things it is said:

"Absentee voting is an exception to the general rule and is in the nature of a special right or privilege which enables the absentee voter to exercise his right to vote in a manner not enjoyed by voters generally."

And the further observation is made that the statute prescribes a condition which is precedent to absentee voting and that the statute is mandatory, all of which is in compliance, or fits in with the requirements of our statute herein above referred to. This Minnesota court then says this:

"If ballots can be passed out for distribution without the making and filing of a verified application by the electors, the bars have been let down altogether. Frauds and corrupt elections are bound to result. It opens the door to frauds and abuses which all election laws seek to suppress and prevent."

Lastly, another illustration, where a statute requires a physician's certificate of physical disability and the application does not have such even though the physical disability is within the knowledge of the judges of election, they may not lawfully permit such an absentee vote. *Davis v. Board of Education, etc.,* 186 N.C. 227, 119 S.E. 372. Thus it is that after a thorough consideration we are satisfied that the absentee voting law of this State must be strictly construed for the reasons above assigned.

The trial judge in his memorandum opinion found in the record, after quoting sec. 2-1602, T.C.A., which is

styled, "Requisites to voting as absentee," and sec. 2-1603, T.C.A., which is styled, "Notice of intention or desire to vote by absentee ballot," makes the following very succinct and pertinent observation:

"Thus, these statutes clearly limit the right to vote by absentee ballot to only four classes of voters, as follows:

"1. Those required to be, or expecting to be absent by reason of business, occupation, health, education, or travel.

"2. The wife of a voter required to be, or expecting to be, absent by reason of business, occupation, health, education, or travel, if she accompanies her husband.

"3. Those certified by a written certificate by a licensed physician as being so ill or disabled that they cannot safely appear at the voting precinct in person, and being within the county.

"4. Those residing temporarily in another county or state. Those whose temporary residence has exceeded 60 days must submit the certificate required by T.C.A. 2-1602 in order to be entitled to an absentee ballot.

■■ "Clearly T.C.A. 2-1602 and T.C.A 2-1603 must be considered in pari materia, and must be construed together. 'Such voter,' the beginning words of T.C.A. 2-1603, necessarily refer to the four classes of voters given the privilege of absentee voting by T.C.A. 2-1602.

"T.C.A. 2-1602 requires those temporarily residing in another county or state for more than 60 days to

accompany their application for absentee ballot with a certificate signed by the person in charge of registration in the county or state of their temporary residence stating that they are not registered and qualified to vote in that county or state, and thus to provide their eligibility to receive and vote an absentee ballot. That class is required to submit proof to the election commissioners upon which that commission may judicially determine the sufficiency of the application.

"T.C.A. 2-1603 requires the sick and disabled within the county to prove that they cannot safely appear at the voting precinct in person, by attaching to their application for absentee ballot a certificate to that effect signed by a licensed physician. The sick and the disabled within the county are required to submit proof, written proof, to the county election commission upon which that commission may determine judicially whether the application is sufficient.

"Construing these two sections of the statute together, and considering the legislative intent and purpose expressed in T.C.A. 2-1601, there is no escape from the conclusion that those applying for an absentee ballot because of required or expected absence 'by reason of business, occupation, health, education, or travel,' and wives accompanying their husbands on that account, are required to state the appropriate one of those statutory reasons for absence in the application for an absentee ballot, as a mandatory prerequisite to the privilege of receiving and voting an absentee ballot. To hold otherwise particularly in view of the statutory requirement that the sick and disabled within the county, and those temporarily absent for more

than 60 days, must state their reasons in their applications for an absentee ballot and must submit documentary proof to substantiate their stated reasons, would require the court to say that the Legislature attached no significance at all to the words 'by reason of business, occupation, health, education, or travel;' for that language is meaningless and impotent 'to prevent fraud in elections by the use of absentee voters' ballots' if any person may apply for and receive and vote an absentee ballot by simply stating in his application that he expects to be absent from the county on election day, without stating any reason whatever for the absence. It is not mere absence from the county that entitles a voter to vote by absentee ballot; instead, he is entitled to so vote only if he is absent for one or more of the specific reasons prescribed by the statute. Obviously, such a statutory reason must appear in his application for an absentee ballot, for otherwise the election commissioners have no basis whatever upon which to determine judicially whether the applicant is entitled to receive and use an absentee ballot.

"Then, this Court is driven to the conclusion from an exhaustive study of the law of this case, and from the facts which appear by admission in the pleadings and by counsel in this case that we need not go any further with these lawsuits. And that the Court must now declare what the judgment of the law should be in these cases. And we are compelled to hold, upon the basis of the opening statement of our Legislature in Section 2-1601 of the absentee voting law and upon the laws of other states, the authorities of other states, which have been quoted, that absentee voting statutes

must be strictly construed. And that their regulatory provisions are mandatory.

■ "The Court is of the firm opinion, for the reasons indicated, that Section 2-1602 and 2-1603 of Tennessee Code Annotated must of necessity be construed together, and, particularly, in the light of the legislative intent expressed in T.C.A. 2-1601. And that an application for absentee ballot must state on its face facts constituting a statutory reason for the intended absence. The election commissioners act in a judicial capacity in passing upon applications for absentee ballots. If the application states no statutory reason for the voter's absence, or an insufficient reason for his absence, the election commissioners have no jurisdiction and have no basis whatever upon which to make a judicial determination that the applicant is entitled to receive and vote an absentee ballot.

■ ■ "The purpose of the application is to enable the election commissioners to consider, the information given therein and determine from the facts stated whether or not the applicant is entitled to the ballot. The ballot will be deemed invalid where the application therefor is substantially erroneous as where it fails to furnish pertinent and necessary information.

\* \* \* \* \*

"The application for an absentee ballot filed as an exhibit within the answers of these defendants in these cases and which by their answer they say was used in the election in question, Form No. 1, furnished by State authority, does not even pretend to provide any place for a reason for the intended absence to be shown.

There is a note following the place provided for the signature and the address of the applicant reading as follows:

" 'If absentee ballot is claimed because of physical disability, Doctor's certificate to that effect must be attached.'

Outside of that, this application form makes no pretense whatsoever of providing any place upon its face for the applicant for an absentee ballot to state his reason. The application reads, in pertinent part, here, after being addressed to the Election Commissioners of a county in this state:

" 'The undersigned expects to be absent from his home County on ——— when the ——— election will
. date
be held and will be unable to appear at the polls on said date. I am a legally qualified voter entitled to vote in said election in the —— precinct, —— ward, of the City of —— or the —— precinct of the —— civil district of said County.

" 'I apply for an absentee ballot to vote in the aforesaid election and desire that the said ballot be sent to me at the address given following my name.'

\* \* \* \* \*

" \* \* \* How can it be said that the use of absentee ballot applications which state no reason whatsoever for the intended absence from the voter's polling place on election day could do otherwise than to render the result of elections incurably uncertain, or that the future omission of which, if permitted, 'must neces-

sarily prove avenues of fraud, tend to prevent a fair exercise of the franchise, or to render elections insecure and uncertain?' Who can doubt that to permit absentee ballots to be issued by a judicial body, which the Board of Election Commissioners is, and in the discharge of which they do and must act in a judicial capacity, to issue absentee ballots to people who stated no fact, no reason whatever, why they intended to be absent, who can doubt that such a practice would, if permitted, would inevitably and unavoidably and inexorably tend to prevent a fair exercise of the elective franchise, and to render elections inscure and uncertain?''

In addition to what has been so well said by the trial judge herein we think that Section 2 of the Act (sec. 2-1602, T.C.A.) wherein it specifically provides that one is entitled to vote by absentee ballot ''upon satisfactory proof of such illness or disability and inability to appear at his or her voting precinct * * *'' clearly sets forth the intention of the Legislature and demands that in addition to the quoted language in this paragraph shows that it was the intention of the Legislature that before such a ballot could be issued the commissioner of elections must have ''satisfactory proof'' of their inability to be there by reason of business, occupation, health, education, or travel. This shows that it was the intention of the Legislature that the commissioners have satisfactory proof of the reasons of these various things before a ballot is issued.

This Court long ago in *Southern R. Co. v. Rowland,* 152 Tenn, 243, 276 S.W. 638, said this: ''It will not be denied that it is within the province of the court, when-

ever necessary to effectuate the legislative intent, to supply language in construing an act, inserting such words and clauses as may reasonably appear to be called for." For this statement the Court there cited a number of earlier decisions of this Court as authority for this proposition. The question is well edited by the authors of Sutherland on Statutory Construction, 3rd Ed., Horack, sec. 4924, Page 453, et seq., wherein the quotation last above quoted from this Court is quoted in Horack. In reading this section from Sutherland, it is said further on in the same section that such insertion of words or phrases are demanded of the court in the interpretation of a legislative act "where legislative intent is clearly indicated by the context or other parts of the statute. * * *" For this statement a number of cases from various jurisdictions in the United States are cited. This statement seems absolutely sound to us. Thus it is that the court in interpreting this absentee voting statute in view of what has been said heretofore should read into the statute that the application for these absentee ballots under the conditions wherein they are granted as herein before referred to should demand that they be upon satisfactory proof, that is to the commissioners of election holding the particular election in the county, city or whatnot.

 By doing this the Act is not changed; it merely is done to clarify the clear intention and meaning of the Legislature in enacting the Act. It is proper to consider the occasion and the necessity for the enactment of a statute, and that construction should be given which is best calculated to advance the object by suppressing the mischief and securing the benefits contemplated. If the purpose, and the well ascertained object of the statute,

are inconsistent with the exact words, the latter must yield to the controlling influence of the legislative will resulting from a consideration of the whole act. Of course, the statute should not be extended beyond the fair and reasonable meaning of its terms, but where the intent of the Legislature is shown it certainly is in line with the authorities of this State ''in order to effectuate the legislative intent words may be modified, altered, or supplied.'' *Hudgins v. Nashville Bridge Co.,* 172 Tenn. 580, 113 S.W.2d 738. In thus construing the statute herein we have adopted a construction from analogous provisions of this Act and thus are supplying an obvious omission. This is not judicial legislation, but is simply a method of arriving at a constitutional legislative intent which has been defectively expressed.

It is very forcibly and ably argued that the Court should accept the form which is filled out by these applicants for absentee ballots because of the fact the form had been approved by the coordinator of elections and in addition to the approval of the ballots in the instant case this form had been approved for all counties in the State and the election commissioners of all counties used such a form. As authority for this argument the case of *New England Mutual Life Ins. Co. v. Reece,* 169 Tenn. 84, 83 S.W.2d 238, is cited. This case is a well reasoned case and for the reasons therein stated the rule as contended for was adopted in that case. The Court though in this case cites, particularly on page 95 of 169 Tenn., on pages 241-242 of 83 S.W.2d many other of our cases holding to the contrary. We think that the rule and the reasons set forth in these cases are more applicable to the question here presented than is the factual background supporting the rule in the Reece case. Very re-

cently this Court in *Reynolds Tobacco Co. v. Carson,* 187 Tenn. 157, 213 S.W.2d 45, adopted the contrary rule quoted from a previous case of *National Life & Acc. Ins. Co. v. Dempster,* 168 Tenn. 446, 461, 79 S.W.2d 564, 569, to the effect that regardless of the fact that other commissioners had approved a different policy their erroneous conclusion did not bind the court in such a situation. We think here that the intention of the Legislature, its caption, and particularly the first and second Sections, as codified above referred to, clearly show the intention of the Legislature and the coordinator of elections arrived at an erroneous conclusion merely from certain statements in Section 3 of the Act (sec. 2-1603, T.C.A.) rather than a judicial consideration of the Act as a whole, which it clearly was his duty to consider in adopting and approving a form for absentee votes.

It is next very ably contended that even conceding that these ballots were illegal, nevertheless the court should have held that there was no showing that the voters who made such applications were not qualified voters and that there was not a valid expression of the peoples' will and thus that the election should have been held valid rather than void. Of course, the action of the court in holding the election void and in not declaring the contestants elected was on the fact that here nearly thirty (30%) per cent of the entire vote constituted these illegal votes. Thus it was that the court held that this being true there was irregularity that forced his conclusion that the election was void and that by reason of this number of votes being cast the will of the qualified voters was not expressed. It is true that when these ballots were cast there was an objection made to casting of each ballot as it went in. All of these were preserved, but clearly in

view of the facts that such ballots were illegal the only conclusion that the trial court could reach was that the election was void by reason of the fact that this number of illegal votes was more than the majority that each candidate in the respective races secured. Thus the election is void and another election should be had for these respective offices. This record shows that in addition to these 1,028 ballots which have been held illegal the minority commissioner also had some four or five hundred ballots in his hands that he didn't attempt to vote which he concedes in an answer herein were illegal and void. Clearly under the law as we construe it, and it was the intention of the Legislature to make this law mandatory or to have a strict construction of it, these people seeking to vote by absentee ballot were seeking to exercise a privilege and they must comply with the conditions of this privilege as a condition precedent to the exercise of such privilege. When they haven't done so the ballot does not express the will of the voter. In other words under the whole general circumstances and tenor of this case we have concluded that the trial judge arrived at the right conclusion in holding the election void. Apparently from the way the pleadings, etc., are shaped and the statements made the appellants are in office now and will hold office as hold overs until there is another election.

Thus it is under all circumstances of the case we have concluded that the trial judge is correct in his final conclusion herein. The result is that the judgment below must be affirmed with costs.

Opinion on Petition to Rehear Filed on Behalf of
Appellees-Contestants

The appellees-contestants question the following statement made by us in the original opinion. This statement is: "Of course, holding thus simply means that the incumbents in these offices at the time this election was held voil will hold over until their successors are elected and qualified by law. *Conger v. Roy,* 151 Tenn. 30, 267 S.W. 122."

The General Election in Polk County of August 2, 1962, was held void as to the above named parties. Prior to the suit, wherein this election was contested by the appellees-contestants, all of these parties were certified as the elected officials for the various offices and were duly inducted into office on September 1, 1962. They then assumed their respective offices to which they had been elected and were so serving at the time this election was held void. One of these parties, to-wit, Austin P. McClary, was, at the time of the election in 1962, the Sheriff of Polk County; and in the election of August, 1962, he was reelected to that office. As to McClary, we held in our original opinion that he was entitled to hold over until his successor was elected and qualified by law and we cited as authority for this holding the case of *Conger v. Roy,* supra. There is really no argument on this feature of these lawsuits in the present petition to rehear. The respondent-contestee, McClary, is thus distinguished from the other respondents-contestees who were elected for the first time in the August 2nd General Election and assumed their offices on September 1, 1962, prior to the election being held void. The Conger case covers McClary in every particular. It is contended though that the Conger case, which was decided in 1924, has been overruled by the subsequent cases of *Hagan v. Henry,* 168 Tenn.

223, 76 S.W.2d 994, and *Shumate v. Claiborne County,* 183 Tenn. 182, 191 S.W.2d 441.

After a careful consideration of Hagan and Shumate, we feel confident that neither of these cases in any way purports to overrule the Conger case. All that the Hagan case held was that a person who receives a certificate of election has *prima facie* title to the office pending an election contest. The Shumate case, if in any way similar to the present case, in effect is authority for the statement made above as quoted from our original opinion here. The Shumate case was a contest by three incum-. bents who had not sought reelection in the General Election that was subsequently declared void as to these particular offices. Thus none of them were elected in the voided election and none of them were in the position of hold overs at the time the election was voided. In the Shumate case the parties who had been elected in this void election had been issued certificates of election and had been sworn in to office, and this Court held that they were holding these offices to such an extent that there was no vacancy in them. In other words, they were at least *de facto* officers and thus the offices were not vacant to such an extent as allowed one who was neither a *de jure* nor a *de facto* officer to contest this question.

The Conger case (and it has not been disturbed in this State so far as we can discover by careful investigation) is express authority for the proposition that an incumbent holds over in office after his election is declared void until his successor is elected and qualified. The question then presented is whether or not these people, who were first elected in August, 1962, and assumed these offices on September 1, 1962, under a certificate of elec-

tion and prior to this election being held void, are incumbents.

The definition of the word, "incumbent," as contained in Webster's New International Dictionary, 2nd Ed., is, "One who is in present possession of a benefice or of any office."

This same definition has in effect been used by the courts. In Vol. 20-A, Words & Phrases, p. 403, it is said: "An 'incumbent' is one who is in the present possession of an office. (citing authorities) * * * An 'incumbent' of an office is one who is legally authorized to discharge the duties of that office. (Citing authority)."

We must conclude that all of these respondents to this petition to rehear are in present possession of the offices which they occupy and are, under these definitions, clearly incumbents. What we have just said is supported by the Shumate case, where Mr. Justice Chambliss, in analyzing the case of *Hagan v. Henry,* said: "it was held that upon issuance to one of the contestants for an elective office of a certificate of election by the Board of Election Commissioners and his induction, he acquires *prima facie* title to the office, and upon induction becomes the lawful occupant thereof."

Counsel in this petition to rehear relies upon Section 2-1924, T.C.A., as authority for his contention that there is a vacancy in the office. This Court in the Conger case considered and quoted in full this same statute, which was then Section 1332, Shannon's Code, and said this:

"We think this section applies only where there is a vacancy; in other words, where there is no one to hold the office. It does not and cannot apply where there is

an incumbent who may hold over until his successor is elected and qualified, as provided by the Constitution. The constitutional provision must control.''

In the present case, McClary is a *de jure* incumbent (he having been Sheriff prior to this election and holding office at the time of the election), and the other respondents to the present petition are *de facto* incumbents for the reasons above expressed. Thus it seems to us that all of these respondents are entitled to hold over on the basis of both the Shumate case and the Conger case.

 Where an election has been held void and the office is occupied by either a *de jure* officer or a *de facto* officer the courts have no power to call a special election. This question was specifically and directly passed upon in the Conger case (it has not been weakened or overruled since, and seems to us logical), where it was said:

''We are of the opinion that there was no law which authorized the county judge, in the case of *G. C. Puckett v. J. E. Conger,* to order a special election to be held October 14, 1922, to elect Conger's successor, and that election was void, of no effect, and did not add anything to the right of complainant Conger to continue in said office. Conger, who was the incumbent at the time the regular election was held in August, 1922, and at the time that election was adjudged void on September 12, 1922, in the case of *G. C. Puckett v. J. E. Conger,* was entitled to hold said office until his successor was duly elected and qualified according to law.''

And further in the Conger case, the Court said:

''The Constitution does not provide for a special election to elect the hold over's successor, but we think it clearly implies that it shall be done at the next regu-

lar biennial election at which any of the county officers are to be elected.

"We think this holding is in accord with the true intent and meaning of our constitution."

The term or word "vacant" in the statute, Section 2-1924, T.C.A., when applied to an office means "without and incumbent" regardless of when or how it became vacant. *Conger v. Roy,* supra.

Therefore after careful thought, investigation and study we are satisfied with our original opinion on this question and the petition to rehear by the present petitioners, appellees-contestants, is denied.