Charles Gene FOUST,
Plaintiff-Appellant,

v.

Willie Kate MAY, et al.,
Defendants-Appellees.

Supreme Court of Tennessee,
at Knoxville.

Oct. 11, 1983.

Petition to Rehear Denied
Nov. 21, 1983.

Opinion on Petiton to Rehear not
Designated for Publication.

Peter Alliman, Michael D. Flynn, Knoxville, for plaintiff-appellant.

Steven R. Seivers, Oak Ridge, William A. Reeves, Clinton, for defendants-appellees.

## OPINION

DROWOTA, Judge.

This case arises from an election contest of the August 5, 1982 general election for the office of sheriff of Anderson County. The principal issue on appeal concerns 186 applications for absentee voting ballots and whether the actions of the deputy registrar invalidated those ballots.

Appellant, Charles Gene Foust, contends that the trial court erred in not invalidating those absentee ballots in which the deputy registrar, Suzanne Reeves, failed to endorse on the application that the voter's signature on the application was the same as that on the voter's permanent registration record. Ms. Reeves, however, signed the applications in question and indicated that they were "accepted and supplies furnished" with a check and/or a date on the approximate box or line.[1] At trial, she testified that she did compare the voter's signatures on the 186 applications in question and found them to be the same. The Chancellor held that the facts did not compel the conclusion that these ballots prevented the election from expressing the free and fair will of the qualified voters, and, accordingly did not invalidate those ballots. We affirm the judgment of the Chancellor.

Appellant Foust filed suit in the Anderson County Chancery Court challenging the election on certain irregularities and deficiencies. A special master was appointed for the purpose of examining and recounting voting machine totals and absentee ballots. The voting machine totals were the same on recount as they were in the initial count made by the Anderson County Election Commission. Foust received 6,288 votes and the incumbent sheriff, Dennis Trotter, Appellee, received 6,262 votes at the polls. Of the absentee ballots, 334 were allowed for Trotter and 194 were allowed for Foust. The total vote showed Trotter winning the election by 114 votes.

In the trial court, the Appellant did not challenge the validity of the voter's signatures on the applications and does not do so here. The sole basis of Appellant's argument is that the failure of the deputy registrar to circle "are" or "are not" on the applications for absentee ballots requires that the ballots furnished, based on those applications, be invalidated.

This Court has held that absentee voting statutes require strict construction, unlike other election laws which are construed liberally in favor of the voter. *Emery v. Robertson County Election Commission,* 586 S.W.2d 103, 107 (Tenn.1979); *Hilliard v. Park,* 212 Tenn. 588, 370 S.W.2d 829, 832 (1965). Further, T.C.A. § 2–6–101 provides the purpose of the chapter is that in order "[t]o prevent fraud in elections no voter's absentee ballot may be received unless the provisions of this chapter are strictly complied with." T.C.A. § 2–6–109(b), which must be construed in accordance with § 2–6–101, provides in pertinent part:

> Upon completion of the application, the registrar shall compare the signature of the voter with the signature on the voter's permanent registration record and shall endorse on the application that the

> ( )  Application accepted and supplies furnished
> _____
>         date
> ( )  Application rejected because
> _____
>         date
>
>                          Registrar

---

1. The applications as found in the record contain the following language, in compliance with T.C.A. § 2–6–122:
   The signatures on the above and on the permanent registration record (are) (are not) the same.

two (2) signatures are, or are not, the same.

Deputy registrar Reeves testified at the trial that she did check the signatures and found them to be the same although she failed to so indicate on the applications. Her testimony is unimpeached and uncontradicted. Nevertheless, it is the position of the Appellant that we are limited to the face of the applications in determining their validity. Therefore, the central issue before us is whether we may look to extrinsic evidence to support these applications for absentee ballots.

The Appellant cites the case of *Hilliard v. Park, supra,* for the proposition that the face of the application must show that the applicant is entitled to vote absentee. The applications questioned in *Hilliard* did not provide any place upon their face for the applicant to state his reason for voting absentee. Because of this defect, the Election Commission could not determine whether the voter was qualified to vote absentee. Therefore, in *Hillard* the ballots were deemed invalid by the trial court and this Court because the application failed to furnish pertinent and necessary information. 370 S.W.2d at 835.

In the case before us, the questioned applications are not defective with respect to the voter's intended absence; each voter supplied the registrar with the necessary information and all of the signatures matched those on the permanent registration record, so there is no doubt that the 186 absentee ballots in question were cast by qualified voters.

In *Payne v. Ramsey,* 591 S.W.2d 434 (Tenn.1979), we affirmed the actions of the Chancellor in invalidating absentee ballots based on the unrefuted testimony of a handwriting expert that the signatures on the applications did not match the signatures on the permanent registration form. *Id.* at 436. We did not specifically set out our reasons for allowing extrinsic evidence to contradict the face of the application; however, it is clear that without such evidence the election would not have reflected the free and fair expression of the voters.

Had the questioned applications in *Payne* been allowed to support the corresponding absentee votes, there is no question that illegal votes would have been allowed in the election. Without the testimony of the handwriting expert, those applications would not have been invalidated.

■ Appellant argues that the case at bar should be distinguished from *Payne* because the extrinsic evidence in *Payne* was used to invalidate and not validate votes. We do not agree. The issue turns on the admissibility of extrinsic evidence and not its application once admitted. If the contesting party is allowed to admit extrinsic evidence for the purpose of invalidating votes, surely the proponents of the election may be permitted to introduce evidence for the purpose of upholding the validity of votes. In the instant case, the signatures themselves are not questioned. The only question is whether the deputy registrar checked the signatures and whether those signatures were, in her determination, the same. Her actions in signing the applications, and indicating that the applications were accepted, show to our satisfaction that the signatures are the same; otherwise, the applications would have been rejected. Her testimony does not contradict what is found on the application, it merely supplements the application with respect to the one line that refers to the comparison of signatures.

■ As we stated in *Emery v. Robertson County Election Commission, supra:*

The integrity of the ballot is jeopardized upon violation of any of the procedural safeguards that the Legislature has included in the election laws, which are obviously designed to (1) prevent undue influence or intimidation of the free and fair expression of the will of the electors or (2) insure that only those who meet the statutory requirements for eligibility to vote, cast ballots. *Id.* at 109.

The "procedural safeguard" at the heart of this controversy is the requirement that the election official—here, the deputy registrar—compare the voter's signatures to "insure that only those who meet the statutory

requirements for eligibility to vote, cast ballots." The "procedural safeguard" is not the placing of a mark on the application indicating that the signatures are or are not the same, rather, it is the act of comparing the signatures. Placing a mark on the application is evidence that one of the procedural safeguards has been satisfied. As we stated above, the deputy registrar's actions of signing the application and indicating that it has been accepted are sufficient evidence that she complied with the safeguard of comparing the signatures. Furthermore, we know from her testimony that she did satisfy the required safeguard of comparing the signatures. As the Chancellor stated in his memorandum opinion:

The Court would find as a fact that the words "(are) (are not)" were not checked, circled or definitively marked in any manner on these 186 APPLICATIONS. The Court would find as a fact that the APPLICATIONS indicate that the APPLICATIONS were accepted by the Registrar and/or were dated by the Registrar indicating the date the ballot was furnished to the voter. The Court feels that any reasonable person looking on the face of the APPLICATION for absentee ballot would conclude that the Registrar had examined, had compared the signatures, and was satisfied that the signatures did compare and did issue the absentee ballot to the applicant voter.

Appellant further argues that the Chancellor erred by applying the "reasonable man" test, that the Chancellor in effect applied a "substantial compliance" test when absentee voting requires "strictly literal compliance." We agree that the provisions for absentee voting must be strictly observed. *Lanier v. Revell,* 605 S.W.2d 821 (Tenn.1980). Violations of statutory safeguards, such as the absentee voting statutes, presents the opportunity for fraud, whether committed or intended. *Emery v. Robertson County Election Commission, supra* at 109 (Tenn.1979). However, the type of error we have before us in this case does not merit the invalidation of the 186 absentee ballots in question. What we are dealing with here is a technical omission, on the part of the deputy registrar, to cross a "t" or dot an "i." We held in *Emery* that where the registrar at large "failed to record voter's answers to questions on applications for permanent registration, such voters should not be disenfranchised because of *failure of registrar to perform her duties properly* " (emphasis added). 586 S.W.2d at 107. The same applies to this case, especially in light of the deputy registrar's testimony that she did compare the voter's signatures and found them to be the same.

Our decision today should not be read for the proposition that applications for absentee ballots may be improperly filled out without impairing their validity. As we stated in *Payne v. Ramsey, supra,* at 436, we do not "suggest that statutory directives on voting procedure should be regarded as frivolous and inconsequential." We find only that, given the facts of this case, these 186 absentee ballots should not be invalidated due to a technical omission on the part of the registrar. Accordingly, the Chancellor's judgment is affirmed.

FONES, C.J., and COOPER, BROCK and HARBISON, JJ., concur.